(No. 36424.—)

EDWARD P. ALLISON COMPANY, INC., Appellant, *vs.* THE VILLAGE OF DOLTON, Appellee.

*Opinion filed March 23, 1962.*

DAILY, J., dissenting.

TENNEY, SHERMAN, BENTLEY & GUTHRIE, of Chicago, (S. ASHLEY GUTHRIE, WILLIAM S. WARFIELD III, and EDWIN H. CONGER, of counsel,) for appellant.

ARTHUR H. DILLNER, of Dolton, and ANCEL, SIEGEL & STONESIFER, of Chicago, (LOUIS ANCEL, and JACK M. SIEGEL, of counsel,) for appellee.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

This is an action to recover money allegedly paid under duress to defendant village as license and inspection fees and for a declaration that the provisions of the ordinance under which such fees were collected are either invalid or inapplicable to the plaintiff. The trial court entered judgment for the defendant. The plaintiff appeals directly to this court, the trial judge having certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal.

Plaintiff was issued a certificate of registration as an electrical contractor by the city of Chicago on January 3, 1958, for that calendar year. In June of 1958, plaintiff was awarded a subcontract to perform required electrical work in a building being constructed by the Chain Belt Company in the village of Dolton. On July 23, 1958, plaintiff applied to the village for an electrical contractor's license. The village building commissioner had found license and inspection fees missing and threatened to shut down the job if they were not paid. As a result, on July 24, 1958, the plaintiff submitted to the village a required indemnity bond and a check in the amount of $156.05 marked "Paid under Protest" for such fees. Accompanying the bond and check was a letter advising the defendant that the payment was being made under protest until such time as the courts determined the right of the village to collect the same.

On June 29, 1960, plaintiff filed this action seeking to

recover the $156.05 which it had paid under protest. Nothing appears in the record to show that plaintiff is now engaged as an electrical contractor in defendant village or has been so engaged since 1958.

Although both parties have argued at length the question of whether an action for a declaratory judgment will lie in this case, we regard this argument as beside the point. The plaintiff is seeking to recover money which it claims was unlawfully exacted from it by defendant. If it has the right to recover the money, that right exists quite independently of any declaratory judgment statute. As an incident to determining plaintiff's right to recover the money, the court must necessarily pass upon the validity and applicability of the ordinance. The fact that plaintiff has labeled its complaint as one for a declaratory judgment should not blind the court to the fact that, even if there were no declaratory judgment statute, plaintiff could maintain an action for the identical relief that it seeks in this case. This is not an action for a naked declaration of abstract rights, but is an action for the recovery of money. To argue, as defendant appears to, that there is no justiciable controversy where one party sues another for the recovery of money is patently fallacious.

Defendant, citing *Standard Oil Company* v. *Bollinger,* 337 Ill. 353, and *Standard Oil Company* v. *Bollinger,* 348 Ill. 82, further argues that plaintiff's mere payment under protest, because of possible penalties, does not render such payment under duress so as to warrant recovery, but that such payment was voluntary within the contemplation of law so as to bar recovery. However, a more nearly analagous situation is found in *Benzoline Motor Fuel Co.* v. *Bollinger,* 353 Ill. 6co, in which, after reviewing and distinguishing the *Standard Oil* cases, we said at page 606: "An examination of authorities in order to ascertain just what is necessary to constitute an involuntary payment of a tax because of duress, discloses certain well settled legal principles which

are applicable to and govern the decision in this case. It is not necessary that the party paying the tax be in physical danger, or that he be actually placed in a position that his property is about to be seized in satisfaction of the tax, or that his back be to the wall, so to speak. (*Chicago and Eastern Illinois Railway Co.* v. *Miller,* 309 Ill. 257.) That case clearly held to the well known rule that a person who accepts the benefits of a statute is generally barred thereafter from challenging its validity, provided no question of public policy or public morals is involved; but where there is an involuntary acceptance of the statutory provisions, or where money is paid under the pressure of severe statutory penalties or to avoid disastrous effects to business, the payment is involuntary and money paid may be recovered. (*Union Pacific Railroad Co.* v. *Public Service Com. of Missouri,* 248 U.S. 67.) Virtual or moral duress is sufficient to prevent a payment made under its influence from being voluntary. (*Robertson* v. *Frank Bros.,* 132 U.S. 17, 33 L. ed. 236.) Where such duress is exerted under circumstances not justified by law it need only be sufficient to influence the apprehensions and conduct of a prudent business man. If the duress is exerted by one clothed with official authority or who is exercising a public employment, less evidence of compulsion or pressure is required."

In *People ex rel. Carpentier* v. *Morgan Trucking Co.* 16 Ill.2d 313, we followed the *Benzoline* case, holding that acceptance of a license where application therefor was made under duress did not estop the licensee from contesting the validity or applicability of the statute under which the license was imposed.

In the instant case plaintiff had a business contract for electrical work, was threatened by a village official that the work would be stopped unless the required fees were paid, and was faced with severe penalties or loss of his contract. Plaintiff did not admit the validity of the fees or of the ordinance imposing them, but clearly and plainly reserved

its right to protest them in a manner and language that could not have been more clearly stated. Payment under these circumstances was not of such a voluntary nature as to preclude plaintiff from contesting the validity of the fees.

The fees which plaintiff paid under protest and which it contends were unlawfully exacted are of two types. The first was an annual contractor's license fee, which the village authorities construed as applicable to electrical contractors. Plaintiff contends that the village was without authority to impose such a fee, and that to require plaintiff to pay the license fee would be contrary to section 23—95 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1959, chap. 24, par. 23—95), which authorizes municipalities to require the registration of electrical contractors and to impose an annual registration fee of $25, but provides that an electrical contractor who is registered in one municipality "shall not be required by any other municipality to be registered or to pay a registration fee in the other municipality."

In 1948 defendant village enacted a comprehensive building code. Chapter 102 of the code, headed "Electricity," provided, among other things, for the registration of electrical contractors and a registration fee of $25. Excepted from this requirement are electrical contractors registered for the current year in another municipality. Since plaintiff was registered in Chicago for the year in question, no attempt was made to collect this registration fee from it. In 1957, however, the village, by an amendatory ordinance, added a new section to an entirely different chapter of the building code not dealing directly with electricity. Among the provisions of this added section was a requirement of an annual "contractors license" fee of $50. The village authorities have apparently construed this fee as being applicable to electrical contractors, including the plaintiff.

The defendant village argues that the express provisions

of section 23—95 of the Revised Cities and Villages Act, authorizing municipalities to require the registration of electrical contractors and to impose a registration fee, but excluding from registration any person duly registered in another municipality, does not preclude it from licensing electrical contractors and imposing another fee designated as a "license fee." This argument, dubious on its face, ignores the legislative background of the statutory provisions authorizing municipal regulation of electrical work and registration of electrical contractors.

In 1924 it was held, in *Arms* v. *City of Chicago,* 314 Ill. 316, that, under the then existing statutes, a municipality was without authority to license electricians or to impose fees for inspecting electrical construction work. The legislative response to this decision was the enactment, in 1925, of two amendatory acts, one authorizing the registration of electrical contractors and the other the regulation of electrical equipment and the imposition of inspection fees. Both 1925 acts were held invalid because of certain exemptions which were without a justifiable basis (*Berry* v. *City of Chicago,* 320 Ill. 536) but were re-enacted in 1927 without the objectionable features. Both the amendatory acts of 1927 were incorporated in the Revised Cities and Villages Act, which was in effect at the time of the current controversy, as section 23—95 and article 37, respectively. Section 23—95 contains the authorization of the registration fee heretofore referred to. Article 37 provides a method whereby municipalities may regulate electrical work and authorizes inspection fees. We think that the express statutory authority for registration and inspection fees precludes the implication of any authority to impose a license fee upon electrical contractors. We hold, therefore, that the contractor's license fee was not properly applicable to the plaintiff.

Plaintiff next contends that the electrical inspection fees were unlawful because they had not been adopted in accord-

ance with the statutory requirements. Article 37 of the Revised Cities and Villages Act, insofar as here pertinent (Ill. Rev. Stat. 1959, chap. 24, pars. 37—2, 37—3) provides as follows:

"37—2. Any municipality by ordinance may regulate the installation, alteration, and use of all electrical equipment as provided in this article and may establish an electrical inspection department for this regulation.

"Each municipality which establishes such an electrical inspection department shall also establish an electrical commission, consisting of five members as follows: The superintendent of electricity or the chief electrical inspector of the municipality shall be a member and the ex-officio chairman of the commission; of the other four members, one shall be an electrical contractor, one a journeyman electrician, one a representative of an inspection bureau maintained by the fire underwriters, if such a representative resides in the municipality, and if no such representative resides in the municipality then the chief of the fire department, and one a representative of an electricity supply company. If there is no person residing in the municipality who is qualified under any one of these descriptions, the mayor or president of the municipality may appoint some other person to fill that position. All members of the electrical commission shall be appointed by the mayor or president of the municipality with the advice and consent of the corporate authorities.

"37—3. The electrical commission shall recommend (1) safe and practical standards and specifications for the installation, alteration, and use of electrical equipment designed to meet the necessities and conditions of the particular locality, (2) reasonable rules and regulations governing the issuance of permits by the electrical inspection department, and (3) reasonable fees to be paid for the inspection by the inspection department of all electrical equipment installed or altered within the municipality. The standards,

specifications, rules, regulations, and fees so recommended shall not become effective until adopted by ordinance by the corporate authorities of the municipality. All fees so adopted shall be paid into the municipal treasury.

"In a municipality which has established an electrical inspection department, no electrical equipment shall be installed or altered except upon a permit first issued by that department  *  *  *."

By section 102—6 of chapter 102 of the building code adopted in 1948, the village of Dolton elected to regulate the installation, alteration and use of all electrical equipment as provided in the statute. Section 102—7 of the ordinance provided for an electrical commission with the qualifications and duties required by the statute; section 102—8 provided for permits to issue to electrical contractors registered as required by the chapter, and section 102—13 imposed the inspection fees here in issue.

Despite the fact that the ordinance provided for an electrical commission with the statutory qualifications, the record affirmatively shows that no electrical commission was ever appointed. Plaintiff contends that the inspection fees are invalid because they were never recommended by the electrical commission as required by the statute. Defendant contends, first, that the statute is permissive and does not require that the village establish an electrical commission, and second, that there was at least a *de facto* electrical commission and that the qualifications of the members can be challenged only in a *quo warranto* proceeding.

While it is true that article 37 of the Revised Cities and Villages Act is permissive, this means only that a municipality is not required to exercise the powers granted by the article. If, however, it does choose to exercise them, it must do so in the manner provided in the statute. The only regulation authorized by article 37 is predicated upon the establishment of an electrical inspection department and an electrical commission, and the only fees authorized by the statute

are those recommended by the electrical commission and enacted by the corporate authorities. Article 37 is permissive in that the municipality has a choice to regulate or not to regulate the installation of electrical equipment. It does not have the choice between regulating it in the manner prescribed by statute and regulating it in some other manner.

Defendant contends that the three-man building committee of the village board, the electrical inspector and the building inspector functioned as the electrical commission and constituted a *de facto* commission, the qualifications of the members of which can be attacked only directly in a *quo warranto* proceeding. This argument might well have some force if a commission had in fact been designated and the only objection were the lack of the statutory qualifications. The record, however, clearly indicates that there was no attempt or even any pretense of appointing a commission pursuant to the statute and ordinance. The only reference in the official minutes of the village board to such a commission is an entry in 1955 which clearly indicates that the village had no electrical commission at that time. The testimony of the individuals purporting to act as the electrical commission was vague and unconvincing and fails to show that they ever really functioned as such. There is a complete failure to establish the requisites of a *de facto* commission. See *Harvey* v. *Sullivan,* 406 Ill. 472, 478-479.

The judgment of the superior court of Cook County is reversed and the cause remanded with directions to enter judgment for the plaintiff in accordance with the terms of this opinion.

*Reversed and remanded, with directions.*

Mr. Justice Daily, dissenting.