THE CELOTEX CORPORATION, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fourth District No. 14946

Opinion filed November 14, 1978.

John L. Parker, of John L. Parker & Associates, Ltd., of Chicago, for petitioner.

William J. Scott, Attorney General, of Springfield (Reed W. Neuman, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case turns upon the question of whether the Illinois Pollution Control Board (Board) has power under section 37 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1037) to grant a variance to an entity that has been denied an operating permit by the Environmental Protection Agency (EPA) but has not appealed that denial nor admitted its noncompliance with statutory or Board regulations concerning emission of pollutants.

On April 19, 1978, petitioner The Celotex Corporation filed a petition for a variance with respondent Board. On April 27, 1978, Board dismissed the petition *sua sponte* and without a hearing, stating in its order that the petition was insufficient to comply with its Procedural Rule 401(a)(5) which requires petitions for variance to include "when applicable,"

"* * * Par. 5. Data describing the nature and extent of the present failure to meet the numerical standards or particular provisions from which the variance is sought and a factual statement why compliance with the Act and regulations was not or cannot be achieved by the required compliance date * * *."

The order explained the ruling by further stating: "No variance can be granted when no violation of the Act or Board's regulations are pleaded."

After Board's May 25, 1978, denial of petitioner's motion for reconsideration, petitioner appealed to this court. We deem that order to be a denial of the variance sought within the meaning of section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041) and therefore to be appealable.

The petition sought a variance until April 16, 1979, from the emission requirements of section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1009(a)) and Rules 102, 202 and 207 as applied to discharges from petitioner's two boilers located at its Quincy paper mill. The petition alleged that the boilers were manufactured in 1952 and that EPA had issued a permit for their operation in 1973 but refused a similar permit in 1975 although petitioner had installed a Breslove regenerative fly ash collector on each boiler. The petition also stated that petitioner had supplied EPA with its (petitioner's) calculations showing compliance with all requirements and offered to supply additional control devices to its equipment but EPA contended that it was not in compliance with emission requirements and suggested that it request a variance operative until it could comply.

Board's ruling was apparently based upon a statement in the petition that petitioner was not aware of "any failure to meet numerical or particular provisions from which the variance is sought, nor is Petitioner aware of any air pollution from its boilers; however, the Agency apparently disagrees since it has not issued an operating permit." The petition did state that petitioner believed that requiring compliance before April 16, 1979, would cause unreasonable hardship because the costs to petitioner and the public would greatly exceed any benefits resulting from earlier compliance.

Petitioner envisions this variance procedure as a device by which its dispute with EPA can be resolved without the necessity of prolonged administrative litigation. It alleges that this procedure was recommended to it by EPA in a letter. In effect it is offering to improve its equipment to a level which it claims to be sufficient to reduce emissions to levels unquestionably permissible by all statutes and regulations. In exchange, it asks to be permitted to operate in the meantime at its present levels of emissions and that it not be required to agree that those levels constitute violations. It maintains that any such admission could be used against it in subsequent enforcement actions and that it should not be required to do so in order to effectuate its proposed settlement of the dispute.

The parties agree that no decision of a court of review of this State is directly in point.

Respondents maintain that the petition did not set forth a ground for relief because unless petitioner admits it is not in compliance, it can not make the showing required by section 35 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1035) and Procedural Rule 401(a)(4) that compliance would work an "arbitrary or unreasonable hardship." They argue that petitioner is

actually trying to improperly appeal the EPA operating permit denial. They assert that for petitioner to put itself into a position to request a variance, it must either (1) admit the lack of present compliance, (2) appeal to a final determination the EPA operating permit denial, or (3) proceed with present operations until an enforcement proceeding is brought against it.

We do not agree with respondent's assertion that petitioner is actually attempting an improper appeal of the permit denial. If that was done, the issues would concern whether petitioner was in present compliance. The issues in a variance proceeding focus upon whether compliance should be excused for a period of time. The question of how the petitioner who does not admit violation can show that compliance would cause the required detriment to it is more difficult. However, we conclude that in cases where one denied a permit is willing, as alleged here, to make improvements bringing its operation into unquestioned compliance, the legislature did not intend to require the circuitous approach suggested by respondents.

Section 40 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1040) provides for appeals to Board of EPA permit denials but no time limit is established. Thus, the right to appeal does not expire by lapse of time. The purpose of the variance procedure is to give temporary relief to a polluter while encouraging future compliance. (*Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 370 N.E.2d 3.) It seems illogical and contrary to the intent of the Act to construe it to always require an entity denied an operating permit but willing to take further steps to insure undisputed compliance to either appeal the permit denial or admit its noncompliance before seeking the variance. Nothing in the Act expressly so requires. We interpret section 35 to permit granting of a variance upon a showing that taking the steps required by EPA to comply with Board rules and regulations would work an arbitrary or unreasonable hardship. In such a case, as here, a variance could be ordered temporarily permitting emissions at the level presently claimed by EPA to be resulting from the use of present equipment.

We deem Board to be wrong in its conclusion that it could not properly proceed on the petition because of the failure of petitioner to admit its noncompliance. We, therefore, rule that it erred in dismissing the petition solely for that reason. We do not rule that the petition is necessarily otherwise sufficient. We reverse the order of dismissal and remand the case to Board for further proceedings consistent with this opinion.

Reversed and remanded.

MILLS and TRAPP, JJ., concur.