(No. 55848.—

THE CELOTEX CORPORATION, Appellee, v. THE POLLUTION CONTROL BOARD *et al.*, Appellant.

*Opinion filed February 4, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield (Douglas P. Karp and Philip L. Willman, Assistant Attorneys General, of Chicago, of counsel), for appellant.

John L. Parker, of John L. Parker & Associates, Ltd., of Chicago (H. Gerald Reynolds, of Tampa, Florida, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal is from a decision by the Illinois Environmental Protection Agency (the Agency) to deny an operating permit for the Celotex Corporation. The Agency's decision to deny the permit was affirmed by the Illinois Pollution Control Board (the Board). The appellate court considered the denial on a petition for direct review and reversed the Board. (100 Ill. App. 3d 520.) (Under the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1041), review proceeds directly to the appellate court.) We granted the Agency leave to appeal under Rule 315 (73 Ill. 2d R. 315).

Celotex owns and operates a roofing felt plant in Peoria. The plant uses two coal-fired boilers to generate steam for heating and electricity. Gases from the boilers pass through dust collectors and are discharged through a common stack.

Celotex operated the boilers from at least 1968 to March 17, 1978, pursuant to operating permits issued by the Agency and its predecessor, the Air Pollution Control Board. An operating permit had been denied in 1975; however, the Agency and the Board were subse-

quently ordered to issue the permit in *Celotex Corp. v. Pollution Control Board* (1977), 53 Ill. App. 3d 662, because Air Pollution Rule 204(c)(1)(A) (Ill. P.C.B. Rules & Regs., ch. 2, R. 204(c)(1)(A)), a sulfur dioxide emission standard upon which the Agency and the Board based the denial, had been declared invalid in *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, *aff'd* (1976), 62 Ill. 2d 494.

On March 13, 1978, prior to the expiration of the permit issued through the court's order, Celotex applied to the Agency for a renewal of the operating permit. In so doing, Celotex used the Agency's standard application form. Under the application heading "DATA AND INFORMATION INCORPORATED BY REFERENCE FROM CURRENT OPERATING PERMIT," Celotex answered "no" to the question, "HAS THE OPERATION AS DESCRIBED IN THE REFERENCED OPERATING PERMIT BEEN MODIFIED ***?" Further, Celotex certified that "ALL PREVIOUSLY SUBMITTED INFORMATION REFERENCED IN THIS APPLICATION REMAINS TRUE, CORRECT AND CURRENT ***."

On April 14, 1978, the Agency sent Celotex a letter requesting current information. The letter asked whether a letter of intent Celotex prepared in 1974 stating that it proposed to buy 30,000 tons of coal annually with a 1% maximum sulfur content still expressed Celotex' intention. Too, it asked for proximate coal analyses and annual tonnages from each supplier as well as data regarding the disposal of solid waste material. There was also a question asking whether the fly ash reinjection units were currently in use, and if they were not, the date of their disconnection and whether they had been removed from the plant. The letter closed with a warning that a failure to supply the information by May 12, 1978, might entail denial of the permit.

Celotex responded by a letter dated May 8, 1978. Ce-

lotex did not submit the requested information, saying that it considered the Agency's request to be untimely. The letter also stated, "Besides, we cannot understand why you would need the additional information, since our previous permit application papers were deemed sufficient for you to issue us an operating permit. As indicated in our renewal application filed March 13, 1978, the operation as described in the operation permit has not been modified." Eventually, however, Celotex did submit some data concerning its use of coal.

As it had warned it might, the Agency on May 18, 1978, denied Celotex' application for renewal of its permit. The Agency said that, if the permit were renewed, section 9(a) of the Environmental Protection Act (hereafter the Act) (Ill. Rev. Stat. 1977, ch. 111½, par. 1009(a)), and Air Pollution Rules 103(b), 202(b), 203(g)(1)(B) and 204(c)(1)(A) (Ill. P.C.B. Rules & Regs., ch. 2, Rules 103(b), 202(b), 203(g)(1)(B), 204(c)(1)(A)) would be violated.

Section 9(a) of the Act prohibits the emission of any contaminant into the atmosphere in violation of pollution standards adopted by the Board under the Act. Rules 202(b), 203(g)(1)(B) and 204(c)(1)(A) are emission standards adopted by the Board for existing emission sources. Rule 202 sets visual emission standards. Part (a) of Rule 202 sets standards for certain new sources, while part (b) sets a standard for all other sources. With certain exceptions, Rule 202(b) prohibits the emission of smoke or other particulate matter having an opacity of over 30%. Rule 203(g)(1)(B) is a particulate-emission standard for solid fuel combustion sources. It limits the emission of particulate matter in any one-hour period. Rule 204(c)(1)(A) also applies to solid fuel combustion sources. It establishes an hourly limit upon the emission of sulfur dioxide.

Rule 103(b), on the other hand, is not an emission

standard. It is the rule governing operating permits. It provides in relevant part:

"(2) Existing Emission Sources:

Prohibition. No person shall cause or allow the operation of any existing emission source or any existing air pollution control equipment without first obtaining an Operating Permit from the Agency...

* * *

(3) Application. An application for an Operating Permit shall contain, as a minimum, the data and information specified in paragraph (a)(2) of this Rule 103. Each application shall list all individual emission sources for which a permit is sought. Any applicant may seek to obtain from the Agency a permit for each emission source, or such emission sources as are similar in design or principle of operation or function, or for all emission sources encompassed in an identifiable operating unit. To the extent that the above specified data and information has previously been submitted to the Agency pursuant to this Rule 103, the data and information need not be resubmitted; provided, however, that the applicant must certify that the data and information previously submitted remains true, correct and current. An application for an Operating Permit shall contain a description of the startup procedure for each emission source, the duration and frequency of startups, the types and quantities of emissions during startup, and the applicant's efforts to minimize any such startup emissions, duration of individual startups, and frequency of startups. The Agency may adopt procedures which require data and information in addition to and in amplification of the matters specified in the first sentence of this paragraph (b)(3), which are reasonably designed to determine compliance with this Chapter, and ambient air quality standards, and which set forth the format by which all data and information shall be submitted." Ill. P.C.B. Rules & Regs., ch. 2, R. 103(b).

The Agency's letter of denial stated that Celotex' failure to supply all the additional information requested by the Agency left the Agency with insufficient data to complete its analysis and consideration of the permit applica-

tion. Too, the letter said that opacity readings of the plant conducted on January 18, 1978, April 19, 1978, and April 20, 1978, showed a violation of Rule 202(b).

The letter also stated that, because Celotex did not submit facts to prove its actual emission levels, the Agency used data previously submitted along with standard emission factors in its calculations. The standard factors were taken from a United States Environmental Protection Agency Publication entitled "Compilation of Air Pollution Emission Factors," which publication is commonly called AP—42. Based upon those calculations, the Agency concluded that the Celotex boilers will emit particulate matter and sulfur dioxide in excess of the standards set out in Rule 203(g)(1)(B) and Rule 204(c)(1)(A).

As we have noted, the Board upheld the denial of Celotex' application. It recognized, though, that the denial could not be based upon Rules 204(c)(1)(A) and 203(g)(1)(B) of the Board, because those rules have been held to be invalid. See *Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169; *Illinois State Chamber of Commerce v. Pollution Control Board* (1978), 67 Ill. App. 3d 839, *appeal dismissed* (1979), 78 Ill. 2d 1.

The appellate court judged that neither could the denial be based upon Rules 202(b) and 103(b). The court decided that all of Rule 202 was invalid, because in adopting the opacity standard, the Board had failed to consider the economic reasonableness of the rule as required by the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a)). The permit could not be denied under Rule 103(b), the court said, because Celotex' certification of the currentness of the previously submitted data obviated the necessity of providing "current information." In view of its invalidation of Rule 202, the court concluded that the recorded violations of that rule would not justify a demand by the Agency for current information.

Accordingly, the court reversed the Board's order that

affirmed the denial. The court remanded the cause to the Board to give the Board an opportunity to validate Rule 202 in accordance with the Act.

The Agency makes five contentions before us: (1) the appellate court was without jurisdiction to consider an attack upon the validity of Rule 202; (2) Celotex is estopped to challenge the validity of the rule; (3) the appellate court erred in deciding that the rule is invalid; (4) the court's invalidation of the entire rule was overly broad; (5) the appellate court erred in deciding that the permit could not be denied for the failure to submit the requested information. We will consider the points in the above sequence.

Under the Act a decision by the Agency to refuse a permit may be contested in a hearing before the Board. (Ill. Rev. Stat. 1977, ch. 111½, par. 1040.) The Act provides that, after such a contest, one who has been denied a permit may obtain review in the appellate court by filing a petition for review within 35 days. (Ill. Rev. Stat. 1977, ch. 111½, par. 1041.) Here, Celotex filed a petition for review within 35 days of the Board's decision to deny the permit, which decision was based in part upon the Agency's view that granting a permit would violate Rule 202(b). The Agency contends that, although the petition for review was timely filed, the appellate court lacked jurisdiction to consider Celotex' challenge to the validity of the rule in its review of the denial of the permit.

The sections of the Act involved are sections 29 and 41. Section 29 provides:

"Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act." (Ill. Rev. Stat. 1977, ch. 111½, par. 1029.)

Section 41 provides:

"Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act,

and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of, pursuant to the provisions of the 'Administration Review Act,' approved May 8, 1945, as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act." Ill. Rev. Stat. 1977, ch. 111½, par. 1041.

The Agency's jurisdictional objection is based upon its contention that section 29 sets forth the exclusive method for challenging a regulation. Under that section, one can contest the validity of a regulation by filing a petition for review within 35 days after the Board's adoption of the regulation. If one does not proceed within that period, the Agency argues, he has "slept on his rights" and may not dispute the validity of the regulation in a proceeding following the denial of a permit. The only course available in that event, it is contended, is to request the Board to change the regulation pursuant to section 28 of the Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1028), or to seek an individual variance. Under section 35 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1035), a variance may be granted "whenever it is found, upon presentation of adequate proof, that compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship."

Rule 202 was adopted several years prior to Celotex' assertion that the regulation is invalid. The Agency says that because Celotex did not follow the statutory method of review, which it contends is the exclusive method, the appellate court lacked jurisdiction to review the regulation.

We are not persuaded that section 29 provides an exclusive review procedure. Professor David P. Currie, a princi-

pal draftsman of the Act and the first chairman of the Board, has stated that the normal method for challenging a pollution regulation is by way of a defense in a proceeding to enforce the rule. (D. Currie, *Rulemaking Under the Illinois Pollution Law,* 42 U. Chi. L. Rev. 457, 473 (1975).) He considers that section 29 provides an additional method for challenging regulations. Its provisions allow one to test a regulation without having to risk being charged with its violation. 42 U. Chi. L. Rev. 457, 473-74.

The Act provides for judicial review of denials of permits. There is nothing in the statute to indicate that the General Assembly intended to deprive one of an opportunity to challenge a regulation that is being applied to deny him a permit simply because he did not contest the regulation immediately after its adoption. The absurdity of holding otherwise becomes completely clear if the requested applicant was not in business within 35 days of the adoption of the regulation.

The language of section 41 itself indicates that section 29 was intended as an added and not an exclusive provision for judicial review. Section 41 states that review of a regulation is not limited to review under section 41 "but may also be had as provided in Section 29 of th[e] Act."

In *Central Illinois Public Service Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 397, the court rejected this argument of the Agency. There a utility company, having been denied an operating permit by the Agency and the Board, petitioned for judicial review. In the appellate court, the company sought to challenge the constitutionality of certain water-pollution-control rules. The court held that section 29 was not an exclusive method for challenging the rules and that the constitutionality of the rules could be tested in a proceeding reviewing the denial of a permit. The court noted that section 29 provides that a person *may obtain* a determination of a rule's validity by petition within 35 days of its adoption, but the Act no-

where says that the person *must* file this petition or lose the right to challenge the rule. The Agency's contention that the court in *Central Illinois* established only an exception to the exclusivity of section 29, an exception limited to constitutional challenges, has no basis, as a reading of the court's opinion shows. See 36 Ill. App. 3d 397, 402-03.

The Agency also cites *Rockford Drop Forge Co. v. Pollution Control Board* (1980), 79 Ill. 2d 271, to support its contention. Specifically, the Agency refers to this court's statement:

> "We agree that but for section 29 there could be no review of rules issued by the Board. That is so because section 41, taken alone, provides for review under the Administrative Review Act, and section 2 of the latter statute provides for review only of 'decisions' of an agency, a term which section 1 defines as excluding rules. Ill. Rev. Stat. 1977, ch. 110, pars. 264, 265. See Currie, *Rule Making Under the Illinois Pollution Law*, 42 U. Chi. L. Rev. 457, 473-75 (1975)." 79 Ill. 2d 271, 277.

When read alone, the quoted portion of the opinion may seem to support the Agency's position. When read in context, however, it is obvious that the passage is inapplicable. *Rockford Drop Forge* involved a petition by 22 Illinois companies for direct review of noise-abatement rules adopted by the Board. On review in the appellate court, the companies raised constitutional objections to the validity of the Act itself. The appellate court refused to consider those arguments. The court said, "Unlike the ordinary appeal involving a decision by an administrative agency *** this petition is before our court pursuant only to the specific provisions of section 29 of the Environmental Protection Act." (71 Ill. App. 3d 295, 297.) The court noted that section 29 speaks of a petition to review the validity or application of a rule or regulation rather than of the validity of the Act. Recognizing that it was not a trial court of original jurisdiction, and that only section 29 was applicable in the circumstances before it, the court concluded that it

lacked authority to consider the challenges to the Act.

When on appeal to this court, this court decided that a consideration of the validity of the Act is proper when a court is reviewing the validity of rules and regulations. The passage cited above by the Agency was preceded by this:

"The court below stated that the basis for its refusal to consider the forging companies' constitutional objections to the Act was that the court lacked jurisdiction to do so. The court reasoned that judicial review of a rule, as contrasted with an enforcement order, was authorized only by section 29 of the Act; that that section speaks only of the validity or application of a rule; and that an inquiry into the validity of a rule does not include a consideration of the validity of the statute under which the rule was promulgated." (79 Ill. 2d 271, 277.)

In that context, it is clear that when this court said, "We agree that but for section 29 there could be no review of rules issued by the Board," the court was expressing its agreement only with the assertion that section 29 was the single provision allowing a petition for direct review of a rule itself. Whether the validity of a rule could be considered in a petition for review of the denial of a permit was simply not involved. It should be noted also that while the Administrative Review Act specifically excludes rules and regulations from the definition of "decision," the exclusion does not apply if "a rule [or] regulation *** is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding ***." Ill. Rev. Stat. 1977, ch. 110, par. 264.

We reject too the Agency's argument that Celotex should be estopped from attacking the regulations. The basis of the contention is that without complaint against the regulations Celotex has obtained operating permits in the past for its Peoria plant, and has, it appears from the opinion in *Celotex Corp. v. Pollution Control Board* (1978), 65 Ill. App. 3d 776, once applied for a variance from Rule 202 for a paper mill in Quincy. Neither action provides a

ground for estoppel, and the decisions cited by the Agency, *Continental Paper Grading Co. v. Howard T. Fisher & Associates, Inc.* (1953), 1 Ill. 2d 37, and *Edward P. Allison Co. v. Village of Dolton* (1962), 24 Ill. 2d 233, are distinguishable.

In effect, the Agency is arguing that simply because Celotex previously did not violate Rule 202, and because at one time it requested that one of its plants be excused from its operation, it has forfeited its right to challenge the legality of the rule when the rule is invoked against Celotex. It is of course true that issues, such as an attack upon the validity of a statute, may be waived explicitly or through inference. This court in *Continental Paper Grading Co. v. Howard T. Fisher & Associates, Inc.* (1953), 1 Ill. 2d 37, 44-45, observed:

> "The record before us shows that a constitutional question as to the validity of the Illinois Architectural Act was put in issue in this case by Fisher's amendment to its answer and Continental's reply thereto. However, the record further affirmatively shows that upon a direct, unequivocal inquiry by the trial court prior to submission of the matter to the court for its consideration, Fisher unequivocally withdrew its contention of unconstitutionality and affirmatively stated in open court, from the evidence, they considered the act constitutional. It is clearly established by the decisions of this and other courts that the right to question the validity of a statute may be waived, either by act or omission, by participating in litigation which by fair inference acknowledges the validity of the statute, or by any course of conduct which shows an intention to waive any question as to the validity of the statute, or where it would be unjust to others to permit objection to afterward be made. (*Jenisek v. Riggs* (1942), 381 Ill. 290; *People v. Gibbs* (1932), 349 Ill. 83; *Chicago Sandoval Coal Co. v. Industrial Com.* (1922), 301 Ill. 389.) In civil proceedings, the acts of the parties to the litigation which by fair inference acknowledge the validity of a statute are binding, and will preclude such parties from attacking such statute as unconstitutional."

Measured by the foregoing, the conduct of Celotex did not constitute a waiver of the question of the validity of Rule 202(b).

Too, we deem that the proposition that one who accepts the benefits of a statute is generally barred from challenging its validity (*Edward P. Allison Co. v. Village of Dolton* (1962), 24 Ill. 2d 233) is not available to the Agency. We consider that if it be judged that there was an acceptance of the provisions of Rule 202(b), it was involuntary within the meaning of the rule. 24 Ill. 2d 233, 236.

Proceeding from this determination that the appellate court did have jurisdiction to consider the validity of Rule 202, we will examine the appellate court's decision that the rule is invalid.

The Act provides, "In promulgating regulations under this Act, the Board shall take into account *** the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution." (Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a).) In *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, *aff'd in relevant part* (1976), 62 Ill. 2d 494, the appellate court held that Rule 203(g)(1) (including parts A, B, C, and D) (the particulate-emission standard) and Rule 204(c)(1)(A) (the sulfur dioxide emission standard) were not promulgated in accordance with the above statutory provision and were arbitrary and unreasonable. The court explained that there were substantial technical and economic problems involved in simultaneously complying with the two rules. It then concluded:

> "Upon a complete review of the record, we are compelled to conclude that Rules 203(g)(1) and 204(a)(1) and (c)(1)(A) were not promulgated in accordance with the law and must be viewed as arbitrary and unreasonable." 25 Ill. App. 3d 271, 285.

> "From our reading of the record, we are unable to state that the Board took into account the technical feasibility of these rules. In so ruling, we are not commenting

on the wisdom of the rules. That is not our province. Without any evidence that the needed systems are beyond the conceptually workable state of development, it cannot be said that the Board's rules rest upon any evidence of statutory compliance. See *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290.

We further hold that there is no evidence that the Board took into account the economic reasonableness of these rules for a substantial number of the generating units in this State. The testimony at the hearings indicated the cost of the sulfur-removal systems would be great. Rather than presenting a formula indicating a balance between cost and pollution control or giving some concrete cost projections, the Board in its opinion offered general statements that there must be a 'balancing [of] the benefits of the contemplated rule against its costs' and that greater costs may be needed to be absorbed 'when the need for pollution abatement is greater.' " 25 Ill. App. 3d 271, 287-88.

The appellate court in *Commonwealth Edison* had reviewed the rules pursuant to a petition for direct review. The court "reversed" the Board's adoption of both Rule 203(g)(1) and Rule 204(c)(1)(A) and remanded to give the Board an opportunity to adopt the rules upon a consideration of any new evidence or to adopt substituted rules.

This court affirmed the appellate court's action. (62 Ill. 2d 494.) It was noted that after the rules were promulgated the Board had held further inquiry hearings concerning the regulation of sulfur dioxide emissions and that the Board had obtained much new information. Too, it was observed that the Act had recently been amended to authorize the use of intermittent control systems as an alternative to meeting the sulfur dioxide emission standard. This court noted, too, that new hearings were to be conducted by the Board.

Upon remand following the *Commonwealth Edison* proceedings in the appellate court and this court, the Board issued an order that purportedly "validate[d]" the rules.

Again, however, the rules were held to be void by the appellate court on the grounds that after the remand the Board had held no hearings on the rules, had refused to have an environmental-impact study prepared regarding the rules, and apparently had not considered the use of the intermittent control systems described in this court's opinion in *Commonwealth Edison*. (*Illinois State Chamber of Commerce v. Pollution Control Board* (1978), 67 Ill. App. 3d 839, *appeal dismissed* (1979), 78 Ill. 2d 1; *Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169.) It does not appear that the Board has repromulgated the standards that were set out in those rules.

The relationship between the rule we consider here, Rule 202 (the opacity standard relied upon by the Board in denying Celotex a renewal permit), and Rule 203(g)(1) (the particulate standard invalidated for a failure to consider its technical feasibility and economic reasonableness) is close and substantial. We judge that the earlier invalidation of Rule 203(g)(1) requires the invalidation of Rule 202 insofar as it applies to emission sources governed by Rule 203(g)(1) because of that relationship.

In adopting the rules, the Board made no separate determination that Rule 202 was economically reasonable. Instead, its determination that Rule 202 was economically reasonable was based upon its finding that the standards set in Rule 203 were economically reasonable. This was expressed by the Board in its opinion accompanying the adoption of the rules. The Board stated:

"The numerical standard for opacity, 40% in the APCB regulations, has been lowered for most sources to 30% on the basis of Agency evidence (R. 30, 31, 496, 501) that this level will generally be achieved or bettered by facilities complying with the numerical standards for particulate matter in Rule 203. Since we have found compliance with the latter economically reasonable, it follows that the corresponding opacity standard is reasonable too." *In re Emission Standards* (1972), 4 Ill. P.C.B. Ops. 298, 310.

Accordingly, Rule 202(c)(3) provides that "Rules 202(a) and 202(b) shall not apply if it is shown that the emission source was, at the time of such emission, in compliance with the applicable mass emission limitations of Rule 203." (Ill. P.C.B. Rules & Regs., ch. 2, R. 202(c)(3).) In the opinion of the Board issued at the time it adopted the rules, the Board explained that the above exception to Rule 202 was made "[i]n order to ensure the reasonableness of [the opacity] limitations." *In re Emission Standards* (1972), 4 Ill. P.C.B. Op. 298, 310.

It appears, then, that the economic reasonableness of Rule 202 was not directly considered. Instead, the Board's conclusion that Rule 202 was reasonable was premised upon the economic reasonableness of the particulate standards in Rule 203. However, a portion of Rule 203, subparagraph (g)(1), has been held invalid because of the Board's failure to consider its economic reasonableness. In such circumstances Rule 202 must be held invalid too for the same reason, insofar as it applies to those sources regulated by Rule 203(g)(1).

The Agency argues, however, that the invalidation of Rule 203(g)(1) should not affect the validity of Rule 202. It points out that in *Commonwealth Edison* the appellate court invalidated Rules 203(g)(1) and 204(c)(1)(A) because of difficulties in complying with those rules simultaneously. From this the Agency concludes that Rule 203(g)(1) was not itself held economically unreasonable and, therefore, the standards in Rule 202, though based upon those in Rule 203, should remain effective. This argument is not convincing. The appellate court in *Commonwealth Edison* held Rule 203(g)(1) void for all purposes as arbitrary, unreasonable, and not promulgated in accordance with the statute. The court reversed the adoption of the Rule; it did not hold it invalid only when the standard in Rule 204(c)(1)(A) is also to be enforced. In such circumstances, the standard in Rule 202 may not be enforced in place of the invalid

rule.

The Agency also argues that the reasonableness of Rule 202(b) was established in *United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34. That decision offers little comfort to the Agency. The case involved a challenge to several regulations, including Rule 202(b). The decision, though, involved the proper standard for review of Board regulations. The petitioners challenged the validity of the Rules on the basis that they were not supported by the manifest weight of the evidence. The court decided that this standard was improper, and that regulations may be overturned only if they are arbitrary, capricious or unreasonable. The court concluded that as the petitioners had not argued in their initial briefs that the rules were arbitrary, capricious or unreasonable, they had "waived, and thereby failed to establish, the point that the regulations they challenge are arbitrary, capricious or unreasonable." (64 Ill. App. 3d 34, 40.)

The Agency points out that, at the conclusion of the opinion in *United States Steel*, the court commented that it had considered all of the arguments made to it and that none of the rules involved had been shown to be arbitrary, capricious or unreasonable. The Agency then points to an argument in a brief in that case in which a party asserted that Rule 202(b) is technically unreasonable. That argument, however, concerned the reasonableness of applying Rule 202(b) to coke ovens, not the economic reasonableness that is concerned here.

We do agree, though, with the Agency's contention that the appellate court's invalidation of all of Rule 202 was overly broad. Parts (a) and (b) of Rule 202 establish opacity standards, while other parts set out certain exceptions to parts (a) and (b), provide compliance dates, and set criteria for determining violations of parts (a) and (b). Rule 202(a) sets forth visual emissions standards for certain new emission sources, and Rule 202(b) sets a visual emission stand-

ard for all other emission sources. Rule 203(g)(1) sets particulate-emission standards and limitations only for fuel-combustion emission sources using solid fuel exclusively. Other parts of Rule 203 govern other sources, such as incinerators and portland cement manufacturing processes. Rule 202, therefore, applies to many sources not governed by Rule 203(g)(1), but regulated by other parts of Rule 203.

Rules and regulations validly promulgated by an administrative agency have the force and effect of law, and like statutes, rules are presumed valid. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 71; *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58.) Not all of Rule 203 has been held invalid; only part (g)(1) has been struck. We see no basis for holding Rule 202 invalid except as that rule applies to sources regulated by Rule 203(g)(1). Because Celotex is a source regulated by Rule 203(g)(1), Rule 202(b) may not be applied to deny Celotex a permit. As did the appellate court, we remand the matter to the Board to allow it to validate the rule in accordance with the statutory requirement, or to adopt a substitute rule.

The final issue is whether the Agency could deny the renewal permit because Celotex did not submit all the information the Agency had requested. The Agency argues that denial was proper because the failure to submit the information deprived the Agency of the material it needed to evaluate the application. It points out that section 39 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1039) provides that the Agency shall issue permits only after the applicant has proved that the facility will not violate the Act or the Board's regulations. The Agency contends that without the current information, Celotex' application lacks such proof.

We agree with the appellate court that Celotex had no duty to resubmit information that it already had furnished and certified as current. Rule 103(a)(2) sets out the minimum information necessary in a permit application. Rule

103(b)(3), which we quoted above, provides, "To the extent that the above information has previously been submitted to the Agency pursuant to this Rule 103, the data and information need not be resubmitted; provided, however, that the applicant must certify that the data and information previously submitted remains true, correct and current."

The Agency argues, however, that it could reject the certification and demand that data be resubmitted because it had found violations of Rule 202(b). We need not consider whether current data may be required after a violation is claimed. We reject the Agency's contention here, as Rule 202 has been held invalid as applied to sources like Celotex. We do not consider that the Agency can rely upon a void rule to request current information.

Of course the Agency can still request information that has not already been submitted, if such information is necessary to show compliance with valid rules. Rule 103(b) provides, "The Agency may adopt procedures which require data and information in addition to and in amplification of the matters specified in [the rule] which are reasonably designed to determine compliance with this Chapter and ambient air quality standards." We recognize that even in cases where the application is for the renewal of a permit, a change in the rules or in the Agency's methods of interpreting data might necessitate a request for information that has not already been submitted.

We have difficulty, though, applying the above conclusions here. The appellate court, it appears, presumed that the Agency's request for current data asked only for information that already had been furnished and was certified as current. (100 Ill. App. 3d 520, 522.) Therefore, the court decided that Celotex had no duty to submit the data. We do not feel so certain. It is obvious from the Agency's letter that some of the requested material had already been submitted, but it is not certain that all of it was submitted.

The Board's opinion, which dealt with the Rule 103(b) ground for denial in a very cursory fashion, sheds no light on our problem. Although the record contains the data in the Agency files already submitted by Celotex, to sift through it to determine whether that data included the material requested requires a measure of scientific expertise that the Board, rather than this court, should exercise.

Moreover, it is unclear whether the requested information was necessary to determine compliance with rules other than Rule 202, which we consider now, and Rules 203(g)(1)(B) and 204(c)(1)(A), which have been held invalid. We agree with Celotex that a renewal permit should not be denied for a failure to submit information needed to determine compliance only with invalid rules. Celotex says that the requested material related solely to those invalidated regulations. The Agency maintains, though, that the data was needed to determine compliance with other particulate and sulfur dioxide standards. This, too, we deem is a matter for determination by the Board.

Accordingly, we judge that the issue of the denial of a renewal permit on the basis of a failure by Celotex to submit all the requested information should be considered by the Board on the remand. The permit can be denied only if the information was not already submitted and certified as current, and only if without the information the application was insufficient to show compliance with rules of the Board other than those which were invalidated.

For the reasons given, the judgment of the appellate court, which reversed the order of the Pollution Control Board and remanded, is affirmed, except that portion of the judgment invalidating Rule 202. The cause is remanded to the Board for further proceedings consistent with this opinion.

*Affirmed and remanded,*
*with directions.*