**COM–CO INSURANCE AGENCY, INC., Plaintiff,**

v.

**WEST BEND MUTUAL INSURANCE COMPANY, a corporation, Defendant.**

No. 84 C 10654.

United States District Court, N.D. Illinois, E.D.

April 20, 1987.

Edward S. Margolis, Teller, Levit and Silvertrust, Chicago, Ill., for plaintiff.

Samuel A. Purves, McKenna, Storer, Rowe, White & Farring, Chicago, Ill., for defendant.

**MEMORANDUM OPINION AND ORDER**

ROVNER, District Judge.

This breach of contract action arises out of the termination of an agency agreement between the plaintiff insurance agency, Com-Co Insurance Agency, Inc. ("Com-

Co"), and defendant, West Bend Mutual Insurance Company ("West Bend"). Com-Co alleges wrongful appropriation of and interference with expirations of insurance policies placed by plaintiff with defendant. West Bend has moved for summary judgment.

### I.

The following facts are not disputed. In August of 1982 Com-Co and West Bend entered into an agency contract that entitled Com-Co to sell insurance policies written by West Bend. The contract was terminated pursuant to its terms on October 3, 1983, effective December 31, 1983. The contract contained a provision entitled "Ownership of Expirations" which stated in part:

> The Agent's records, use and control of expirations, including Direct Billed business and continuous term policies, shall remain the property of the agent and left in his undisputed possession, provided the Agent has then rendered and continues to render timely accounts and payments of all amounts due the Company, or provides security therefore acceptable to the Company....

Following the termination of Com-Co as an agent for West Bend, the defendant mailed a letter directly to each insured whose coverage had been placed with West Bend by Com-Co as those policies were about to expire. A blind copy of each letter was mailed directly to Com-Co. The letters stated:

> Dear Insured:
>
> Your insurance agent, is no longer licensed to write business with our Company. We are directing a copy of this letter to your insurance agent to avoid misunderstanding. We will be unable to renew your policy of insurance through your present insurance agent.
>
> We understand that your insurance agent would be willing to have your policy written through another company licensed with his agency. Please discuss this matter with your insurance agent to make the appropriate arrangements. If your agent is unable to secure the same

or similar coverage with another company, we would be willing to renew your policy through another agent licensed to write business with our Company. If that is your request, please contact the agent: Central DuPage Insurance Agency, P.O. Box 21, West Chicago, Illinois (312–231–6767).

> Very truly yours,
>
> WEST BEND MUTUAL INSURANCE COMPANY
>
> Blind P.S. to Insurance Agent
>
> Dear _____: We write this letter to your account, with a copy to your agency, to fulfill our obligations under Illinois Statute, Chapter 73, Sec. 753.01. If we do not receive from you written proof of your placement of this account through another company prior to 20 days of the expiration date, we will be compelled to renew the policy through another producer. A photograph of a Declarations Page or a letter naming the new carrier and effective date of coverage will suffice. Thank you for your cooperation.

Com-Co wrote a letter to West Bend on November 21, 1983, protesting West Bend's direct mailing to the insureds. Of approximately 165 policies placed with West Bend by Com-Co, approximately 70 were placed elsewhere by Com-Co, while approximately 75 were renewed with West Bend through another agent.

### II.

West Bend asserts as the basis for its motion for summary judgment Section 141.01 of the Illinois Insurance Code, which states:

> No company authorized to do business in Illinois shall cancel, terminate or refuse to renew any policy on the ground that the company's contract with the agent through whom such contract was obtained has been terminated. This provision shall not alter any contract between the agent and the company regarding ownership of expirations where the agent is able to place the policy with

another insurer with similar coverage to the satisfaction of the insured. Ill.Rev.Stat. ch. 73, ¶ 753.01.

In addition to Section 141.01 of the Insurance Code, West Bend has submitted to the Court an interpretation of Section 141.01 coauthored by Richard D. Rogers, Deputy Director of the Illinois Department of Insurance, and Kim M. Brunner, Legal Division of the Illinois Department of Insurance. West Bend implies that this interpretive letter constitutes a "regulation" of the Department of Insurance and imposes "obligations" upon the parties. (West Bend's Reply Memorandum in Support of its Motion for Summary Judgment, at 2). The interpretive letter states in part:

Since the obligation rests with the company to maintain the business produced by a terminated agent, subject to successful efforts by the terminated agent in placing the risks with another company to the insured's satisfaction, the company must accurately determine whether it should remain on the business placed by its former agent. Therefore, the company is responsible for determining (1) if its policy has been placed by the terminated agent with another company and (2) if such placement has been accomplished to the satisfaction of the insured. Should either (1) or (2) not occur, the company is not only prohibited from cancelling or nonrenewing the policy (except for legitimate reasons as stated above) but also is under an affirmative obligation to manifest its intention to renew the policy directly to the insured. Failure of the company to manifest its intention to renew a policy under these circumstances may cause the company to remain on a risk indefinitely or until such time as it complies with applicable provisions of the Illinois Insurance Code pertaining to cancellations and nonrenewals.

West Bend asserts that Section 141.01 and the Department of Insurance letter place a legal duty upon West Bend to determine whether each insured's coverage has been replaced by the terminated agent to the satisfaction of the insured and that this duty may not be abrogated by contract between agent and insurer. Thus, West Bend argues that the conduct complained of by the plaintiff in this action was mandated by the Illinois Insurance Code and the Illinois Department of Insurance and therefore cannot support a claim of liability against defendant.

Com-Co asserts in its response to West Bend's motion that the actions of West Bend in informing the customers of Com-Co of the termination of the Agency agreement and referring them to another agency is an interference with Com-Co's right to expirations. Com-Co states further that Section 141.01 does not require an insurance company to send out letters to insureds or take any other affirmative action. Rather, Com-Co argues, Section 141.01 requires only that West Bend not terminate its relationship with the insureds because of cancellation of its contract with Com-Co.

### III.

The effect of a ruling or regulation promulgated by a state agency is determined by application of the Illinois Administrative Procedure Act ("the Act"), Ill.Rev. Stat. ch. 127, ¶¶ 1001–1021. Section 407.1 of the Insurance Code, Ill.Rev.Stat. ch. 73, ¶ 1019.1, expressly adopts the Act as applying to all administrative rules and procedures of the Department of Insurance.

A determination of the authority of an interpretive statement of the Department of Insurance begins with the definition of a "rule" under section 3.09 of the Act. " 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy...." Ill.Rev.Stat. ch. 127, ¶ 1003.09.

The Department of Insurance interpretive letter falls within the Act's definition of a rule as it is a statement applying generally to all insurance agents and companies and provides the Department's interpretation of Section 141.01. However, in order for a rule to be binding under the Act it must meet several other requirements. Section five of the Act states:

(a) Prior to the adoption, amendment or repeal of any rule, each agency shall accomplish the actions required by Sec-

tion 5.01, 5.02 or 5.03, whichever is applicable.

(b) No action by any agency to adopt, amend or repeal a rule after this Act has become applicable to the agency shall be valid unless taken in compliance with this Section....

Ill.Rev.Stat. ch. 127, ¶ 1005.

Section 5.01 is entitled "General Rulemaking"[1] and lists a number of requirements that must be met by an agency before a rule promulgated by the agency becomes valid. Subsection (a) states that the agency must provide 45 days notice to the general public before adopting a rule. Notice must be by publication in the Illinois Register and include the text of the new rule, the specific statutory citation upon which the proposed rule is based, a complete description of the subjects and issues involved, an "initial regulatory flexibility analysis," and the time, place and manner in which interested persons may present their views and comments concerning the intended action. The subsection also provides, under specified circumstances, for a public hearing on the proposed rule. Ill. Rev.Stat. ch. 127, ¶ 1005.01(a).

Section 5.01(b) provides an additional notice period of 45 days commencing on the day that written notice of the rule is received by the Joint Committee on Administrative Rules. *Id.,* ¶ 1005.01(b). Section 5.01(c) further provides that upon expiration of the notice period, notification from the Joint Committee that no objection to the new rule will be issued, or response by the agency to objections issued by the Joint Committee, the agency shall file a certified copy of each rule for publication in the Illinois Register. The rule becomes effective upon filing with the Secretary of State unless a later effective date is required by statute or is specified in the rule. *Id.,* ¶ 1005.01(c).

Finally, Section 4(c) provides: "No agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act." *Id.,* ¶ 1004(c).

A diligent search of the Illinois Register and Illinois Administrative Code has yielded no mention of any rule or regulation of the Department of Insurance bearing on Section 141.01 of the Insurance Code. Similarly, the record in this action provides no basis for concluding that the interpretive letter issued by the Department of Insurance constitutes a rule promulgated by the Department in accordance with the Act.

■ "Rules and regulations validly promulgated by an administrative agency have the force and effect of law, and like statutes, rules are presumed valid." *Celotex Corporation v. Pollution Control Board,* 94 Ill.2d 107, 68 Ill.Dec. 108, 116, 445 N.E.2d 752, 760 (1983). However, even where an agency statement meets the statutory definition of a rule under the Act, failure by the agency to follow proper procedure for adoption of the rule renders the rule invalid. *Senn Park Nursing Center v. Miller,* 104 Ill.2d 169, 181, 83 Ill.Dec. 609, 615, 470 N.E.2d 1029, 1035 (1984). Legislative rules held invalid due to a procedural deficiency are regarded as "interpretive." *See generally, Production Tool Corp. v. Employment and Training Administration,* 688 F.2d 1161, 1165–66 (7th Cir.1982). Interpretive rules have only persuasive force. "Such rules are entitled to varying degrees of deference or weight, but a reviewing court ordinarily is free to substitute its own view of the relevant statute." *Id.* at 1165. *See also, United Consumers Club, Inc. v. Attorney General,* 119 Ill.App.3d 701, 75 Ill.Dec. 35, 37, 456 N.E.2d 856, 858 (1st Dist.1983). Therefore, regardless of whether the Department of Insurance intended its statement on Agency Termination to be a rule and thereby

---

**1.** Section 5.02 is entitled "Emergency Rulemaking" and Section 5.03 is entitled "Peremptory Rulemaking." Section 5.02 provides for promulgation of emergency rules under threat to the "public interest, safety and welfare." Section 5.03 provides for rulemaking "required as a result of federal law, federal rules and regulations, or an order of a court, under conditions which preclude compliance with general rulemaking requirements ...". Ill.Rev.Stat. ch. 127, ¶¶ 1005.02, 1005.03.

binding or merely a policy statement of persuasive force only, the absence of any evidence that the procedures for adopting a rule as outlined in the Act were followed negates any claim that the statement is binding upon this Court. *Cf., Tyska v. Board of Education Township High School District 214, Cook County,* 117 Ill. App.3d 917, 73 Ill.Dec. 209, 216, 453 N.E.2d 1344, 1351 (1st Dist.1983) (not every interpretation by an agency has the status of a rule or regulation).

■ The question remains whether Section 141.01 of the Insurance Code imposes a legal duty upon insurance companies to contact individual insureds upon termination of an agency contract and offer to renew their policies. This is a question of statutory construction. In construing a statute "the language of the statute is to be given its plain and ordinary meaning, ... and where the intendment of the statute is clear from the language itself a court will not resort to judicial construction by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent." *Dienes v. Holland,* 78 Ill.2d 8, 15, 34 Ill.Dec. 292, 295, 397 N.E.2d 1358, 1361 (1979) (citations omitted).

The first sentence of Section 141.01 states, "No company authorized to do business in Illinois shall cancel, terminate, or refuse to renew any policy on the ground that the company's contract with the agent through whom such policy was obtained has been terminated." The language of the sentence is clear, and there is nothing within it which creates an affirmative duty on the part of the insurance company "to manifest its intention to renew a policy directly to the insured." The statute simply states that a company cannot "refuse to renew," and suggests that it is the insured and not the insurance company that must seek to continue coverage.

This interpretation is supported by the legislative history of the section. During the debate in the Illinois House of Representatives, Representative Holewinski stated that the proposed section "... provides that an insurance company that cancels its agent's contract, that is the agent who writes the insurance, cannot automatically terminate all the policies that agent has written. What ... what this does is give the *consumer* the option so that if his agent's contract with the insurance company is canceled *he* can either seek new insurance through that agent or anyone else or continue with the company." Proceedings of the Illinois House of Representatives, May 26, 1978, at 172 (emphasis added).

The second sentence of Section 141.01 states, "This provision shall not alter any contract between the agent and the company regarding ownership of expirations where the agent is able to place the policy with another insurer with similar coverage to the satisfaction of the insured." A plain reading of this provision suggests a concern on the part of the legislature concerning possible effects of the section upon terminated agents that is incompatible with an implied affirmative duty on the part of the insurance company to directly manifest its intent to renew to all potentially affected insureds. To require an insurance company to directly solicit insureds before the policies had even expired, as was the case in this action, could substantially impair an agent's contractually-guaranteed right to use and control of expirations.

On the basis of the foregoing analysis, the Court rejects West Bend's claim that Section 141.01 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, ¶ 753.01, mandates the issuance of letters to insureds such as those sent by West Bend in this action. The Court further finds the interpretive letter issued by the Illinois Department of Insurance is not binding upon this Court and is unpersuasive. Therefore, West Bend's motion for summary judgment is denied. The Court cautions that this ruling should not be construed as a finding for the plaintiff on the issue of liability; the holding is simply a rejection of the defense to liability raised by West Bend's motion. A status hearing in this action is set for April 30th at 9:30 a.m.