118 Ill. App.3d 772 (1983)
455 N.E.2d 188
THE ENVIRONMENTAL PROTECTION AGENCY, Petitioner,
v.
THE POLLUTION CONTROL BOARD et al., Respondents.
No. 82-666.
Illinois Appellate Court  First District (4th Division).
Opinion filed September 29, 1983.
*773 Tyrone C. Fahner, Attorney General, of Springfield (H. Alfred Ryan, Assistant Attorney General, of counsel), for petitioner.
Richard J. Kissel, Jeffrey C. Fort, and Roy M. Harsch, all of Martin, Craig, Chester & Sonnenschein, of Chicago, for respondent Alburn, Inc.
Order reversed.
JUSTICE LINN delivered the opinion of the court:
Petitioner, Illinois Environmental Protection Agency (Agency), filed a direct appeal in the appellate court (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1041) challenging the decision of the Illinois Pollution Control Board (Board) to remove several conditions from the construction and operating permits the Agency had issued in September 1980 to Alburn, Inc., operator of a liquid waste incinerator in Chicago, Illinois. The Agency contends that the Board's decision to remove the permit conditions was against the manifest weight of the evidence; the Board argues in response that the Agency's action in imposing the conditions was unreasonable and unnecessary to prevent air pollution.
We reverse the decision of the Board and reinstate the two conditions that the Agency here argues were properly imposed on the September 1980 permits issued to Alburn, Inc. Because the Agency does not present specific arguments for the reinstatement of several of the remaining conditions, we do not include those conditions in our deliberations.

*774 FACTS
The liquid waste incinerator that is the subject of this controversy was constructed in 1974 and has been operating under an Agency permit scheduled to expire on December 3, 1979. During the permit period, operation of the facility was taken over by Alburn, Inc., although there is no record that the permit was transferred to the subsequent operator. When Alburn applied for a renewal of this operating permit, the Agency decided that because of the change in operators as well as the various modifications made to the facility, the detailed information usually requested on new permit applications would be required.
After meeting with representatives of Alburn early in 1980, the Agency twice requested and received additional information. Although Alburn forwarded to the Agency various diagrams, flow charts, descriptions of its waste tanks, and an "operating procedures manual" prepared by an earlier owner, the Agency found these to be of little value for permit issuance purposes. Alburn's own consulting engineer admitted that the submitted plans were inadequate for a complete and accurate review of Alburn's ability to comply with the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1001 et seq.) and the regulations developed by the Board to implement the environmental control standards established by the Act. Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1005(b).
Consequently, in February 1980, the Agency denied Alburn's request for an operating permit. Instead, it issued a construction permit allowing Alburn limited operation subject to several conditions designed to ensure compliance with the Act while maintenance and operating procedures were developed, testing was conducted, and modifications were made to the facility to enable Alburn to meet emission standards determined by the Agency to be applicable to Alburn's incinerator. The permit itself was issued only after Alburn guaranteed that even though it could not produce sufficient detailed information to meet the Agency's requirements, "the emission source and control equipment would comply with all applicable standards." Nevertheless, a stack test conducted June 2, 1980, resulted in emissions exceeding the limits established in Rule 203(e)(3) of the Board's rules and regulations. Illinois Pollution Control Board Rules and Regulations, ch. 2: Air Pollution (1970).
On September 9, 1980, in an effort to accommodate Alburn's business needs, the Agency issued short term construction and operating permits containing the contested conditions, which were designed to ensure Alburn's compliance with the Act and applicable regulations while further information about the facility was gathered. Alburn *775 promptly filed an appeal with the Board, and on May 1, 1981, obtained a stay of conditions. Hearings were held before the Board in July and August, 1981; on February 17, 1982, the Board ordered the removal of several of the contested conditions on the grounds that the Agency (1) inappropriately applied the emission standard of Rule 203(e)(3) to the Alburn incinerator, and (2) failed to recognize Alburn's capacity to blend wastes. The Agency appeals from the Board's order.

OPINION

I
 1 We first address two procedural issues raised by the Board: (1) whether the Board's order removing the permit conditions was final and appealable, and (2) whether the Agency's failure to appeal a 1976 Board decision declaring Rule 203(e) inapplicable to liquid waste incinerators may be used collaterally to estop the Agency from relitigating that same issue in any subsequent case. The Board first claims that because its order removing the challenged conditions also remanded the permits for Agency revision and did not terminate the Agency's duty to impose conditions effecting the purposes of the Act (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1039(a)), it was not an "order * * * which terminates the proceedings before the administrative agency" (Ill. Rev. Stat. 1979, ch. 110, par. 264) and therefore did not quality as a final judgment appealable under the authority of Supreme Court Rules 335 and 301. 73 Ill.2d Rules 335, 301.
Section 41 of the Act (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1041) grants to "[a]ny party to a Board hearing" the right to judicial review of any order, determination, or other final action of the Board. Section 40 of the Act (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1040) requires the Agency to appear as respondent in an action before the Board to contest the Agency's denial of an operating permit; for purposes of review, the imposition of conditions is regarded as a permit denial. (Rule 103(k), Illinois Pollution Control Board Rules and Regulations, ch. 2: Air Pollution (1970).) The Agency, having been made a party to the action before the Board, may seek review of a Board decision that arguably impinges on the Agency's authority to determine whether or not a specific applicant is entitled to a permit. (Ill. Rev. Stat. 1979, ch. 111 1/2, pars. 1004, 1039; Landfill, Inc. v. Pollution Control Board (1978), 74 Ill.2d 541, 387 N.E.2d 258.) We find that to be the case here, and therefore we conclude that the present case is properly before us on appeal.

*776 II
 2 The second procedural issue raised by the Board is based on its claim that because the Agency failed to appeal an earlier Board decision refusing to apply certain emission standards to liquid waste incinerators, the Agency will be estopped from appealing the same issue in any subsequent case. We find the precedent cited by the Board as authority for its position to be inapplicable to the instant case.
In Illinois State Chamber of Commerce v. Pollution Control Board (1979), 78 Ill.2d 1, 398 N.E.2d 9, the supreme court held that in the interest of preventing multiplicity of litigation, collateral estoppel can be used to dismiss an appeal when the current appellant had litigated unsuccessfully the identical issue in an earlier case and in that instance had decided against further appeal. The crucial factor distinguishing Illinois State from the instant case is that here, the Agency is appealing to the appellate court from a decision of an administrative agency, while in Illinois State, the issue concerned the estoppel effect of an earlier Board decision not to appeal to the Illinois Supreme Court from an adverse decision of the Third District Appellate Court. As a consequence of that decision, the supreme court declared, "Once the Board's right to appeal the appellate court's Ashland Chemical decision expired, that court's resolution of the issues became final, and the Board could no longer maintain this appeal." (78 Ill.2d 1, 7-8, 398 N.E.2d 9, 12.) However, the Board's loss of its right to appeal to the supreme court from a decision of the appellate court has no bearing on the Agency's right to appeal to the appellate court from a Board decision.
Aside from the limited types of cases guaranteed an appeal to the supreme court as a matter of right (73 Ill.2d R. 317), petitions for leave to appeal to the supreme court are granted as "a matter of sound judicial discretion." (73 Ill.2d R. 315.) In contrast, the Agency has an unqualified statutory right to judicial review of an adverse Board decision. (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1041.) If we were to hold Illinois State applicable to administrative orders and determinations, one failure to appeal would result in a given issue being shielded forever from judicial review. Obviously, such a result would be untenable, having no support in any case law or statutory authority. We therefore find that the Board may not collaterally estop the Agency from pursuing its right to appeal from a Board decision.

III
Turning now to the substantive issues of the case, we initially note that although the Agency broadly categorizes its appeal as one *777 from all the conditions removed by the Board, its arguments and conclusions focus on two crucial conditions included in the operating permit, both of which were designed to ensure Alburn's compliance with the particulate emission standards of Rule 203(e)(3). In addition, one condition the Agency wishes to reinstate requires each individual waste stream accepted by Alburn to meet the same Rule 203(e)(3) standards, thus preventing Alburn from blending various waste streams before burning. The threshold issue we must address, therefore, is whether the particulate emission standards of Rule 203(e)(3) apply to Alburn's incinerator. If they do, then the Agency's imposition of those conditions was a valid exercise of its permit-issuing authority under section 39 of the Act. (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1039.) If they do not, then the Board was correct in holding those conditions to be unreasonable and in removing them.
The appropriate standard for review of Board decisions depends on whether the Board was acting in a quasi-legislative or quasi-judicial capacity. (Monsanto Co. v. Pollution Control Board (1977), 67 Ill.2d 276, 367 N.E.2d 684.) When the Board reviews a denial of a permit, usually it is acting in a quasi-judicial capacity, for which the appropriate standard for appellate court review is the manifest weight of the evidence. (Getty Synthetic Fuels, Inc. v. Pollution Control Board (1982), 104 Ill. App.3d 285, 432 N.E.2d 942.) However, "[a]lthough the present case involved an appeal from the denial of a permit, it presented the Board with a question of defining the scope of the emission standards. * * * [T]his function of defining the scope of the emission standards is a quasi-legislative act." Environmental Protection Agency v. Pollution Control Board (1981), 86 Ill.2d 390, 400, 427 N.E.2d 162, 167.
The Board argues that because the Agency applied the allegedly inappropriate particulate emission standards of Rule 203(e)(3) to Alburn's incinerator, the Board's decision to remove the conditions defined the scope of the standards and thus became a quasi-legislative act, to be upheld by this court unless "clearly arbitrary, unreasonable or capricious." (86 Ill.2d 390, 402, 427 N.E.2d 162, 167.) However, we find the Board's order removing the conditions to be impermissible under either standard.
 3 First, the Board maintains that the Agency acted unreasonably in applying the Rule 203(e)(3) standards to Alburn's incinerator because the Board had settled the issue with finality in its 1976 case, Hyon Waste Management Services, Inc. v. Environmental Protection Agency (1976), 24 Ill. P.C.B. Op. 427. In that case, the Board held that liquid waste incinerators did not have to comply with the particulate *778 emission standards of Rule 203(e), which reads in pertinent part,
"(e) Particulate Emission Standards and Limitations for Incinerator.
* * *
(2) No person shall cause or allow the emission of particulate matter into the atmosphere from any incinerator burning more than 2000 pounds of refuse per hour to exceed 0.08 grains per standard cubic foot of effluent gases corrected to 12 percent carbon dioxide.
(3) No person shall cause or allow the emission or particulate matter into the atmosphere from all other existing incinerators to exceed 0.2 grains per standard cubic foot of effluent gases corrected to 12 percent carbon dioxide." Illinois Pollution Control Board Rules and Regulations, ch. 2: Air Pollution, Rule 203(e)(2), (3).
The Board's reasoning in Hyon was based in part on the definitions of "incinerator," "waste," and "refuse" found in the Board's rules and regulations. All three words were interpreted according to their definitions when the Environmental Protection Act was enacted, i.e., referring to solid waste only. The Board rejected intervening legislative redefinitions of "waste" and "refuse" to include liquid waste, reasoning that because the definition of "incinerator" had not been changed, the definitions of the other two words were restricted to their meanings at the time "incinerator" was defended by the Board. The other reason given by the Board for its decision in Hyon was that Hyon had argued persuasively that the 12% correction factor was inappropriate for the type of liquid waste Hyon proposed to burn. The Agency, however, now argues that Hyon is no longer dispositive of the issue of the applicability of Rule 203(e) to liquid waste incinerators. We agree with the Agency.
Of the several reasons presented by the Agency to support its application of the Rule 203(e) standards to Alburn's incinerator, we find one to be persuasive: in a 1979 regulation amending Rule 203(e)(4), the Board itself held the rule applicable to a liquid waste incinerator, thereby reversing sub silentio its earlier holding in Hyon. (In re Particulate Emission Standards for Combustion of Low Carbon Wastes, R77-5 (1979), 32 Ill. P.C.B. Op. 403.) Before the decision in R77-5, Rule 203(e)(4) read as follows:
"No person shall cause or allow the emission of particulate matter into the atmosphere from all other new incinerators to exceed 0.1 grains per standard cubic foot of effluent gases corrected to 12 percent carbon dioxide."
*779 In its petition to amend Rule 203(e)(4), Addressograph-Multigraph Corporation argued that when the 12% correction factor was applied to the emissions from its liquid waste facility, the number of particulates in the effluent gases was exaggerated; a correction factor of 50% excess air would produce measurements accurately reflecting the incinerator's emissions. The Board agreed and added the following qualification to Rule 203(e)(4), the wording of which is significant to this appeal:
"A. Rule 203(e)(4) shall not apply to aqueous waste incinerators which, when corrected to 50 percent excess air for combined fuel and charge incineration, produce stack gas containing carbon dioxide dry basis volume concentrations of less than 1.2 percent from the charge alone * * *."
Clearly, if Rule 203(e)(4) regulating new incinerators shall not be applied to those aqueous waste incinerators that use the 50% excess air correction factor and thereby comply with the standard, it shall be applied to all other new aqueous waste incinerators. By analogy, then, Rule 203(e)(3) also applies to liquid incinerators, because the only differences between (3) and (4) are the age of the incinerator regulated, the quantity of waste burned per hour, and the allowable particulate emissions. In its opinion accompanying the amendment, the Board stated, "Under the present Rule 203(e)(4) Petitioner [the liquid waste incinerator] must meet a particulate emission standard of 0.1 grains per standard cubic foot of effluent gases corrected to 12% carbon dioxide." No clearer statement of the Board's intent that Rule 203(e) apply to liquid waste incinerators could be made.
Nevertheless, when the Agency attempted to apply the standards of Rule 203(e) to Alburn's permit application, which was filed only a few months after the decision in R77-5, the Board did an abrupt about-face and declared "[A]s in Hyon, the Board finds that Alburn is not bound by the Rule 203(e) particulate emission standards." The Board then attempted to distinguish R77-5 by stating that even though it thereby "adopted a rule of statewide applicability amending the CO2 correction factor" and that "the 50% correction factor would be appropriate for all incinerators," Addressograph was the only known incinerator of its type at the time R77-5 was written; consequently, the entire amendment should be applied to only the one facility.
The Board continued,
"* * * Alburn has not argued the inapplicability of the 12% correction factor to its incinerator, as did Hyon regarding 203(e)(2) and Addressograph regarding 203(e)(4). However, in view of *780 the sweeping language in Hyon regarding the particulate standards, the Board believes that the drawing of such narrow, legalistic distinctions is not within the best interests of the Agency, the regulated community, or the public."
While it is true that the Board's interpretation of its own rule normally would be accorded great weight (Modine Manufacturing Co. v. Pollution Control Board (1976), 40 Ill. App.3d 498, 351 N.E.2d 875, "the Board's apparently inconsistent construction of Rule [203(e)] * * * prevents us from treating the Board's interpretation of its own rule with the usual deference." (Olin Corp. v. Pollution Control Board (1977), 54 Ill. App.3d 480, 483, 370 N.E.2d 3, 6.) In view of the disagreement between the Board's various interpretations of its Rule as well as its complete inability to present any persuasive reasons for refusing to follow its own language in the amended rule and in the opinion explaining the amendment, we find the Board's action declaring Rule 203(e) inapplicable to Alburn's incinerator to be unreasonable, arbitrary, and capricious. We therefore restore to Alburn's operating permit the conditions designed to ensure compliance with Rule 203(e)(3).

IV
 4 The last issue raised by the Agency is whether the Board erred in removing the condition that prevented Alburn from blending wastes before burning them. The Agency argues that the information supplied by Alburn was insufficient to demonstrate to the Agency that Alburn had developed a blending protocol that would result in incineration emissions conforming to applicable standards. Therefore, the Agency required Alburn to burn wastes as received, each delivery to be accompanied by documentation of results of a test burn. The Board declared this condition unreasonable. We disagree.
The sole question before the Board in a review of the Agency's denial of a permit is whether the petitioner can prove that its permit application as submitted to the Agency establishes that the facility will not cause a violation of the Act. (Ill. Rev. Stat. 1979, ch. 111 1/2, par. 1040.) If the Agency has granted the permit with conditions to which the petitioner objects, the petitioner must prove that the conditions are not necessary to accomplish the purposes of the Act and therefore were imposed unreasonably. The Board may not be persuaded by new material not before the Agency that the permit should be granted. (Soil Enrichment Materials Corp. v. Environmental Protection Agency (1972), 5 Ill. P.C.B. Op. 715.) When reviewing the Agency's denial of a permit or imposition of any conditions, "the decision of the *781 Board shall be based exclusively on the record before the Agency including the record of the hearing, if any * * *." Ill Rev. Stat. 1981, ch. 111 1/2, par. 1040; Peabody Coal Co. v. Environmental Protection Agency (1979), 35 Ill. P.C.B. Op. 379, 380.
As noted earlier, Alburn's own engineer admitted that the submitted information concerning blending was inadequate to inform the Agency of Alburn's blending capability; the only information supplied was a chart of the facility containing a box labelled "Blending Tanks"; no description of the blending process was supplied because no protocol had been developed. The February 17, 1982, order of the Board removing the conditions from Alburn's permit stated that (1) Alburn's waste-blending capabilities had been developed since the filing of the application, (2) the Board expected the Agency to revise the remanded permits in light of factual information developed after the filing of the 1980 permit application, and (3) "the Agency's most proper action in 1980 would have been to deny the operating permit and to issue a construction permit of longer duration." Finding the issuance of a four-month operating permit to be an "unsound exercise of the Agency's permitting discretion," "[t]he permit to operate should not have been issued until information gaps had been closed to the Agency's satisfaction."
Given these clear indications that the Board removed the permit conditions in reliance on subsequently acquired information not available to the Agency and therefore not properly in the record, we find that Alburn had not met its burden of proof in its permit application, and the Board therefore erred in removing the conditions imposed by the Agency to ensure Alburn's compliance with the Act during the time needed to improve and test the incinerator and prepare a thorough description of the facility's operation.
For all of the reasons discussed above, we find that the Agency's decision to impose conditions on Alburn's operating permit was not against the manifest weight of the evidence, and the Board's refusal to apply the particulate emission standards of Rule 203(e)(3) to Alburn's liquid waste incinerator was unreasonable, arbitrary and capricious. Accordingly, we reverse the decision of the Board and reinstate the permit conditions imposed by the Agency.
Reversed.
ROMITI, P.J., and JIGANTI, J., concur.