JOLIET SAND AND GRAVEL COMPANY, Petitioner-Appellant, v. THE
POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—87—0141

Opinion filed November 30, 1987.

John L. Parker & Associates, Ltd., of Chicago (John L. Parker, of counsel), for petitioner-appellant.

Neil F. Hartigan, Attorney General, of Springfield (Michael J. Maher, Assistant Attorney General, of Chicago, of counsel), for respondents-appellees.

JUSTICE SCOTT delivered the opinion of the court:
This case comes on appeal for direct review of a final order entered by the Illinois Pollution Control Board (Board) which upheld a decision by the Illinois Environmental Protection Agency (Agency) to deny an application for renewal of an operating permit submitted by Joliet Sand and Gravel Company (Joliet).

Joliet's initial operating permit was issued December 30, 1980, to expire on December 21, 1985. The original permit, as issued, allowed for the operation of a primary jaw crusher identified as Pioneer Model 3042, a secondary roll crusher identified as Pioneer Model 2454, and a Pioneer Model 526 F. Screen. Joliet applied for renewal of the permit on December 16, 1985. The Agency denied the renewal on March 7,

1986, listing the following reasons for denial: (1) particulate emissions in excess of 30% opacity limitation of section 212.123 (35 Ill. Adm. Code 212.123 (1985)) based on field inspections; (2-3) particulate emissions in excess of those allowed by section 212.321 (35 Ill. Adm. Code 212.321 (1985)) for both the "Steadman" and "Spokane" crushers based on calculated emission levels since actual emission levels had not been provided; (4) violations of fugitive particulate limitations of section 212.301 (35 Ill. Adm. Code 212.301 (1985)) based on field observations; and (5) failure to provide information of compliance with special condition No. 3 of the 1980 operating permit, requiring 10% moisture in raw materials. The letter stated that the Agency would reevaluate the application upon receipt of written information and additional documentation.

In response to the denial, on June 16, 1986, Joliet's engineer submitted a letter requesting issuance of a renewal permit. The letter proposed that the current Steadman and Spokane crushers, which together have a rated capacity of 575 tons per hour (TPH), would be replaced with a new Spokane crusher with a rated capacity of 600 TPH. The letter indicated that emissions for the new crusher, as calculated pursuant to the 1985 AP—42, were within the allowable rate. Also, deletion of the 10% moisture condition was requested on the basis that the raw materials used by Joliet were classified as "wet material" by virtue of a 2% moisture content according to AP—42. Lastly, a new well had been drilled to supply water to spray bars on the process line to control excess opacity and particulate emissions and to spray roads to control those fugitive emissions.

By letter dated August 26, 1986, the Agency again denied Joliet's application for permit renewal, citing potential violations of sections 201.142, 201.157, 212.321, 203.201, and 203.770 (35 Ill. Adm. Code 201.142, 201.157, 212.321, 203.201, 203.770 (1986)). The letter additionally stated that the application failed to contain the minimum information required by Board rules to allow the Agency to determine compliance with the Act and regulations, and more specifically, that (1) the informational requirements of section 230.770 regarding compliance of the new crusher and any new conveyors with respective 10% and 15% opacity limits were not met, (2) calculations of particulate emissions for the primary and secondary crushers indicated that particulate emissions limitations would be exceeded, based on a calculated 50% effectiveness rate for use of water in the spray bars rather than a surfactant, and (3) that construction of the new crusher would involve a major modification of a major particulate emission source located in a nonattainment area, requiring a submission of various in-

formation required by section 200 *et seq.* (35 Ill. Adm. Code 200 *et seq.* (1986)).

On September 30, 1986, Joliet filed its petition for hearing to contest permit denial with the Board. Under section 40(a)(1) (Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1)), if a permit is denied by the Agency, the applicant must petition the Board for a hearing within 35 days to contest the Agency decision. If there is no decision by the Board within 120 days from the date the petition was filed, "the petitioner may deem the permit issued under this Act." Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1).

Numerous discovery, continuance and other motions were made during the pendency of Joliet's appeal to the Board. The hearing officer, pursuant to powers granted by sections 103.140 and 103.161 (35 Ill. Adm. Code 103.140, 103.161 (1986)), ruled on the various motions made. Without specifically mentioning each and every motion and ruling, we have reviewed the motions and are of the opinion that the hearing officer and the Board acted within the discretionary power granted by the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*) when ruling on motions regarding discovery, continuances and other matters.

The first public hearing was set for November 25, 1986. The hearing was later continued to December 8 and December 15, 1986. Neither of those scheduled dates produced a hearing. The hearing officer then reset the hearing for January 13, 1987, and stated that all testimony presented by Joliet would have to be completed by noon January 14 and that the hearing would terminate at the end of that day. On the morning of January 14, Joliet's counsel stated that Joliet waived its right to a Board decision for an additional period of 8 days, or from January 28, 1987 (the 120-day limit), until February 5, 1987, and additionally moved for a continuance of the hearing to present further evidence. The motion was denied. Following the January 14, 1987, hearing, Joliet again moved the Board for additional time and filed waivers to allow additional time for such hearings. The motions were denied.

The Board rendered an opinion and order adverse to Joliet on February 5, 1987, and the instant petition for review was filed on March 12, 1987.

At a hearing before the Board to contest a denial of a permit application, the sole question before the Board is whether the applicant proves that the application, as submitted to the Agency, demonstrated that no violation of the Environmental Protection Act would have occurred if the requested permit had been issued. *Environmental Pro-*

*tection Agency v. Pollution Control Board* (1983), 118 Ill. App. 3d 772, 455 N.E.2d 189.

The Board, in affirming the Agency decision, found that the permit was correctly denied on "the basis of Joliet's failure to provide sufficient information to demonstrate that its facility would not cause violations of Sections 201.142, 201.157, and 203.770 \*\*\* [and] \*\*\* incorrectly denied \*\*\* on the basis of Sections 212.321 and 203.201."

Joliet asserts that the Agency and the Board wrongfully denied renewal of its operating permit for two reasons: (1) that Joliet was denied a full and fair hearing because it was not allowed to examine Agency witnesses regarding factual information before the Agency at the time of the permit denial; and (2) that Joliet met its burden of proof to obtain a renewal operating permit.

■ The proper standard of review is whether the decision of the Board, in denying Joliet's operating permit, is against the manifest weight of the evidence. (*Environmental Protection Agency v. Pollution Control Board* (1985), 138 Ill. App. 3d 550, 486 N.E.2d 293; *Environmental Protection Agency v. Pollution Control Board* (1983), 118 Ill. App. 3d 772, 455 N.E.2d 188.) Thus, a different conclusion than that reached by the Board must be evident, not merely reasonable. *Willowbrook Motel v. Pollution Control Board* (1985), 135 Ill. App. 3d 343, 481 N.E.2d 1032.

Initially, the Agency states that the March 7, 1986, denial letter was a separate denial apart from the denial letter of August 26, 1986, and, thus, the March 7 denial is not a part of these proceedings. To this point, we adhere to the rationale and ruling of the Board stating that there is a "continuum between the information considered by the Agency on March 7 and August 26 \*\*\* [and that] \*\*\* [t]he Hearing Officer was correct in admitting evidence concerning the March 7 denial to the extent that such evidence could be relevant to correctness of the August 26 denial."

■ Joliet first states that Illinois law requires administrative proceedings to be governed by the fundamental principles and requirements of due process of law. (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754; *People v. Scott* (1927), 326 Ill. 327, 157 N.E. 247; *Italia America Shipping Corp. v. Nelson* (1926), 323 Ill. 427, 154 N.E. 198.) Further, that section 5 of the Environmental Protection Act provides that "[t]he Board shall have authority to conduct hearings \*\*\* upon petitions for review of the Agency's denial of a permit." (Ill. Rev. Stat. 1985, ch. 111½, par. 1005(d).) This requires the full panoply of safeguards normally associated with a due process hearing. (*Environmental Protection Agency v. Pollution Con-*

*trol Board* (1985), 138 Ill. App. 3d 550, 486 N.E.2d 293.) We agree with Joliet that it has a right to a due process hearing in an administrative proceeding.

█ Joliet argues that it was denied due process because it was (1) denied discovery in advance of the hearings, (2) prevented from presenting witnesses at the hearings, (3) denied access to important documents held by the Agency during discovery and at the hearing, and (4) by being denied a continuance of the hearings by the hearing officer and the Board. As to Joliet's first two contentions, the hearing officer and the Board were acting under authority granted by sections 103.161 (Discovery) and 103.203 (Conduct of Hearing). (35 Ill. Adm. Code 103.161, 103.203 (1986).) These sections grant the hearing officer discretion to issue protective orders "denying, limiting, conditioning or regulating discovery to prevent unreasonable delay, expense, harassment, or oppression." (35 Ill. Adm. Code 103.161(b) (1986).) The hearing officer also is to receive "evidence which is admissable under the rules of evidence as applied in *** civil actions." (35 Ill. Adm. Code 103.204(a) (1986).) In the present case, Joliet attempted to depose, subpoena or both no less than 19 people. Many of these persons had no direct bearing on the denial of the operating permit. In light of the nature of the proceeding and the names of the persons who were attempted to be either subpoenaed or deposed, we believe the hearing officer and the Board properly considered the numerous discovery motions and properly ruled that only five persons needed to appear at hearing. We believe the Board order of January 12, 1987, accurately reflects our opinion with regard to the hearing officer's rulings, as follows:

> "It is the duty of the hearing officer to manage the discovery and hearing processes in light of the due process rights of the litigants as well as the due process rights of the public to have the Board make a timely and considered decision. *** The Board finds that the Hearing officer has properly performed that function given all of the circumstances of this case, and the Board accordingly affirms the Hearing Officer's Order *** ."

█ With regard to Joliet's assertion that it was denied access to important documentation, we note that the Board took into consideration documents (respondents' exhibits Nos. 5, 8 and 10) which the hearing officer had excluded in reaching its decision. Two other documents, called "Enforcement Decision Group Memoranda" (EDG's), contain the discussion of Agency personnel and attorneys in deciding whether to bring an enforcement action against an alleged polluter.

Apparently, the permit analyst had included EDG documents in a list of documents to be included in the Agency record filed with the Board on October 28, 1986. When the Agency's attorney discovered these documents had inadvertently been included, he withdrew the documents. We emphasize that these documents pertained to a possible enforcement proceeding and, as such, were not related to the present application proceeding. We believe the documents were properly excluded from evidence.

Joliet's fourth assertion of denial of due process regards the denial of Joliet's motions for a continuance of the hearings. After the January 1987 hearings, Joliet filed a series of waivers attempting to secure additional time for hearings and filed several motions for continuance, all of which were denied by the Board. Joliet asserts that the Board must not deny a motion for continuance arbitrarily. (*Brown v. Air Pollution Control Board* (1967), 37 Ill. App. 2d 450, 227 N.E.2d 754; *Ullmen v. Department of Registration & Education* (1978), 67 Ill. App. 3d 519, 385 N.E.2d 58.) We affirm the denials.

A motion for continuance for any permit appeal proceeding shall be granted by the hearing officer whenever justice may require. (35 Ill. Adm. Code 103.143(a) (1986); see also *Brown v. Air Pollution Control Board* (1967), 37 Ill. App. 2d 450, 227 N.E.2d 754.) In this particular case, the hearing officer had afforded Joliet as much time as could possibly be given and still allow for a decision by the Board within 120 days from the filing of Joliet's petition as required by Illinois law. (Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a).) Our purview of the record indicates that Joliet's numerous discovery motions requesting irrelevant material was the primary cause for the hearing date's being scheduled so close to the 120-day deadline and also the limited amount of time allocated for the actual hearing. Although Joliet filed several waivers which could have ultimately delayed a decision by the Board 38 days to March 5, 1987, the waivers were not filed until the January hearings. To reschedule the hearing would have required giving 21-day notices required by section 40(a)(1) of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1)) and, according to the Board, would have resulted in further time constraints.

Regardless, the hearings were originally set for November 25, 1986. On that date, the hearing officer kept the hearing open until December 8. On December 8, 1986, the hearing officer formally granted Joliet's continuance and reset the hearing for December 13, at which time Joliet was granted a continuance to January 13, 1987. We believe that Joliet was primarily responsible for the time con-

straints it now complains of; therefore, justice did not require continuing the matter.

▆ Joliet also claims that it met the burden of proof required to obtain an operating permit and asks this court to remand this case with instructions that an operating permit issue to Joliet. In support thereof, Joliet initially argues that the Agency's denial letter of August 26, 1986, was insufficient to comply with section 39(a) of the Act. Section 39(a), in relevant part, states as follows:

"Sec. 39. (a) When the Board has by regulation required a permit for the construction, installation, or operation of any type of facility, equipment, vehicle, vessel, or aircraft, the applicant shall apply to the Agency for such permit and it shall be the duty of the Agency to issue such a permit upon proof by the applicant that the facility, equipment, vehicle, vessel, or aircraft will not cause a violation of this Act or of regulations hereunder. The Agency shall adopt such procedures as are necessary to carry out its duties under this Section. In granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board hereunder. Except as otherwise provided in this Act, a bond or other security shall not be required as a condition for the issuance of a permit. If the Agency denies any permit under this Section, the Agency shall transmit to the applicant within the time limitations of this Section specific, detailed statements as to the reasons the permit application was denied. Such statements shall include, but not be limited to the following:

(i) the Sections of this Act which may be violated if the permit were granted;

(ii) the provision of the regulations, promulgated under this Act, which may be violated if the permit were granted;

(iii) the specific type of information, if any, which the Agency deems the applicant did not provide the Agency; and

(iv) a statement of specific reasons why the Act and the regulations might not be met if the permit were granted.

If there is no final action by the Agency within 90 days after the filing of the application for permit, the applicant may deem the permit issued; except that this time period shall be extended to 180 days when (1) notice and opportunity for public hearing are required by State or federal law or regulation, or (2) the application which was filed is for any permit to develop a landfill subject to issuance pursuant to this subsection." Ill.

Rev. Stat. 1985, ch. 111½, par. 1039(a).

The August 26, 1986, denial letter read as follows:

"This Agency has reviewed your Application for Operating Permit for the above referenced project. The permit application is DENIED because Section 9 of the Illinois Environmental Protection Act, and 35 Ill. Adm. Code 201.142, 201.157, 212.321, 202.201 and 230.770 might be violated.

The following are specific reasons why the Act and the Rules and Regulations may not be met:

35 Ill. Adm. Code 201.157 specifies minimum data and information to be contained in an operating permit application. As your permit application did not contain this information, the Agency could not determine compliance with the Act and Regulations.

Specifically, the following information must be provided in order for the Agency to determine compliance of your new 600 TPH Steadman Crusher and with the Regulations:

1. The applicable requirements of Section 230.770 need to be addressed to the new 600 TPH Steadman Crusher and any new conveyors associated with it, i.e. compliance with limits of 10% and 15% opacity, respectively.

2. The Primary Crusher without any control equipment and operating with a process weight rate of 480,000 pounds per hour, is allowed to emit up to 47.41 pounds per hour of particulate matter, pursuant to 35 Ill. Adm. Code 212.321.

3. The Secondary Crusher controlled by water spray bars and operating with a process weight rate of 1,200,000 pounds per hour, is allowed to emit up to 69.01 pounds per hour of particulate matter pursuant to 35 Ill. Adm. Code 212.321. ***

4. It is the Agency's assessment that *** the applicable requirements of Section 203.201 needs [sic] to be addressed."

The Board by order dated February 5, 1987, affirmed the Agency's denial "on the basis of Joliet's failure to provide sufficient information to demonstrate that its facility would not cause violations of Sections 201.142, 201.157, and 203.770." Our review will focus solely on sections 201.142, 201.157, and 203.770 (35 Ill. Adm. Code 201.142, 201.157, 203.770 (1986)).

It is interesting that in Joliet's brief it argues that the denial on the basis of section 203.770 was insufficient under section 39(a) of the Act. However, in its reply brief, Joliet states that the specific reasons for denial regarding section 203.770 comply with section 39(a) of the Act. In its reply brief Joliet asserts that only the Agency's reference

to section 201.142 in its denial letter fails to comply with the Act. Therefore, our discussion will focus on whether the Agency's reference to section 201.142 complies with the requirement of section 39(a) of the Act.

Section 201.142 (35 Ill. Adm. Code 201.142 (1986)), "Construction Permit Required," is a brief section which states generally that no person shall allow the construction of or modify any existing emission source without first obtaining a construction permit. We agree with Joliet that the Agency's August 26 denial letter, when looking solely at section 201.142, does not state any specific information that Joliet's application failed to provide. In particular, the agency could have stated that required information regarding a construction permit for the proposed new 600 TPH Steadman Crusher had not been supplied. To this point, Joliet argues that this was not an application for a construction permit but for an operating permit. We agree. However, the Agency also cited a possible violation of section 201.157 (35 Ill. Adm. Code 201.157 (1986)), which specifies that an application for an operating permit must contain data specified in section 201.152, "contents of Application for Construction Permit." Section 201.152 in turn requires information concerning the "nature of the emission source," and "type, size, efficiency and specifications *** of the proposed emission source." (35 Ill. Adm. Code 201.152 (1986).) The Agency specifically indicated that this information was lacking for the proposed new 600 TPS Steadman Crusher. Thus, in order to obtain an operating permit, one must have complied with the specifications required to obtain a construction permit. Section 201.142 merely affirms that a construction permit is required for any new or modified emission source. We believe, therefore, that within the context of the letter, Joliet was fairly advised as to the deficiencies relating to the Agency's recitation of section 201.142.

Regardless, the Agency has cited possible violations of sections 201.157 and 203.770, which Joliet has admitted in reply brief complied with section 39(a) of the Act. The Agency denial letter of August 26, 1987, is adequate to fully advise Joliet of the deficiencies contained within its application for an operating permit.

Joliet also argues that under the reasoning of *Ashland Chemical Co. v. Pollution Control Board* (1978), 57 Ill. App. 3d 1052, 373 N.E.2d 826, and *The Celotex Corp. v. Pollution Control Board* (1981), 100 Ill. App. 3d 520, 429 N.E.2d 194, it has met its burden of showing compliance with the Act by submitting data and information specified in the previous Joliet permit of 1980. In relation to this argument, Joliet asserts that there is no evidence that any changes have

been made by Joliet amounting to a modification requiring a construction permit under sections 201.142 and 201.157 or compliance with opacity limitations under section 203.770. We believe the record indicates otherwise.

The original operating permit allowed Joliet to operate two Pioneer crushers; moreover, at some point in Joliet's operation, one or both of the Pioneer crushers were replaced with Steadman and Spokane crushers. Subsequently, when Joliet's engineer wrote his letter to the Agency, he proposed to replace the Steadman and Spokane crushers with a new, larger Steadman crusher.

We pass no opinion as to the rulings of the *Ashland* and *Celotex* cases, as they are not on point, but agree with Joliet that section 201.157 allows an applicant to rely on previously submitted information if the applicant certifies that the data remains true, correct and current. In this case, the record clearly indicates that the previous data pertaining to the Pioneer crushers are not relevant to the proposed new crusher and therefore new data concerning the Steadman crusher were required under section 201.157 which, by implication, requires compliance with section 201.142.

■ With regard to compliance with section 203.770, we adopt the reasoning of the Board, stating:

"Section 203.770: Opacity Standards

35 Ill. Adm. Code 203.770 incorporates 40 CFR Part 60 which is entitled Standards of Performance For New Statutory Sources, Nonmetallic Mineral Processing Plants. Final Rule 40 CFR 60 promulgates standards of performance for new emission sources. Because such facilities contribute significantly to air pollution, the intended effect of these standards is to require all new, modified and reconstructed mineral processing plants to achieve emission levels that reflect the best demonstrated systems of emission reductions. 40 CFR Part 60, Summary, Vol. 50 No. 148, Thursday, August 1, 1985.

Section 60.676(C) limits fugitive emissions from crushers to a maximum of 15 opacity and 60.676(B) limits these emissions from all other sources to a maximum of 10% capacity.

No data was presented in the application regarding the Joliet operations' ability, using the proposed new crusher and new conveyors, to comply with these limitations. Joliet has not argued that these limitations do not apply to its facility. For these reasons, this reason for denial is affirmed. In so holding, the Board has given no weight to the facility's alleged opacity violations relating to operation of the existing crushers, as this is

irrelevant to the new operation as proposed. (See also *Waste Management, supra, Finks, supra,* and *Fritz Enterprises, Inc. v. IEPA,* PCB 86—76, September 11, 1986, concerning alleged violations and the Agency's permit determinations.)"

In summary, we find that the decision of the Board is not against the manifest weight of the evidence and, therefore, the decision of the Illinois Pollution Control Board is affirmed.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.