THE CITY OF EAST MOLINE, Petitioner, v. THE POLLUTION CONTROL BOARD, Respondents.

Third District   No. 3—88—0788

Opinion filed August 31, 1989.—Rehearing denied October 11, 1989.

James J. DeNapoli and Roy M. Harsch, both of Gardner, Carton & Douglas, of Chicago (Daniel F. O'Connell, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE SCOTT delivered the opinion of the court:

The City of East Moline (East Moline) appeals from a decision of the Illinois Pollution Control Board (Board) wherein the Board affirmed the Environmental Protection Agency's (Agency's) denial of East Moline's application for a National Pollution Discharge Elimination System (NPDES) permit for the operation of East Moline's public water supply treatment facility.

The underlying facts of this appeal are generally undisputed. On May 15, 1986, East Moline applied to the Agency for an NPDES permit for the discharge of waste water from its public water treatment facility into the Mississippi River. The application represented that the maximum daily concentration of total suspended solids (TSS) in the plant's discharge was 20,000 mg/1 with normal concentrations at 10,000 mg/1. Thus, East Moline requested a permit be issued with a TSS limitation of 20,000 mg/1. The Agency issued a draft permit proposing that the TSS discharge be limited to 15 mg/1 as a 30-day average and 30 mg/1 as a daily maximum. East Moline filed objections to the proposed permit and also submitted a formal written comment to the Agency, wherein it argued the proposed TSS limitations were arbitrary, unreasonable and invalid as applied to East Moline and, therefore, requested the Agency to revise the permit to the original standard of 20,000 mg/1 it previously requested. As support for its position, East Moline noted the current economic hardship it was facing due to loss of industry and the inadequate funds available to install control equipment to meet the Agency's proposed limitation levels. The Agency, at the hearing before the Board, stipulated that certain meetings regarding East Moline's inability to meet the limitations and discussions regarding environmental impact took place, although no documentation of these meetings was included in the Agency record before the Board. Despite East Moline's objections, on November 20, 1986, the Agency issued to East Moline an NPDES permit subject to the TSS limitations as previously outlined in its draft permit.

On December 19, 1986, East Moline filed an NPDES permit appeal with the Board challenging the TSS limitation imposed by the Agency permit on the grounds the regulations establishing the limits were arbitrary, unreasonable and invalid as applied to East Moline, because of the cost of compliance and the nonadverse impact of the

present discharge on the water quality of the Mississippi River. A hearing was held before a hearing officer August 28, 1987. East Moline attempted to present testimony and admit exhibits into evidence regarding the cost of compliance with the TSS restriction and a study concerning the environmental impact of the current discharge level. The hearing officer disallowed the evidence on the basis that it had not been submitted to the Agency and was, therefore, beyond the scope of review. The Board upheld the hearing officer's decision and subsequently denied East Moline's appeal.

Two issues are presented for review. First (issue 1), whether a petitioner can challenge the validity of a regulation *as applied* in the context of a permit application and appeal, and second (issue 2), whether a petitioner can submit evidence not previously presented to the Agency at a hearing before the Board hearing officer. The questions presented are issues of law, not of fact.

Regarding issue 1, the Agency permit issued to East Moline restricted the TSS discharge in accordance with regulation 35 Illinois Administrative Code section 304.124(a) (1985), which prohibits discharge of effluent containing TSS in excess of 15 mg/l. East Moline has made no claim that the regulation does not control its public water discharge facility, nor does East Moline claim that the regulation was improperly promulgated and therefore is arbitrary and unreasonable in a general sense. Instead, East Moline argues that because it cannot comply with the TSS limitations for financial reasons, or because East Moline's discharge, at present levels, does not create an adverse economic impact, the regulation is invalid *as applied* to East Moline's facility.

East Moline cites *Celotex Corp. v. Pollution Control Board* (1983), 94 Ill. 2d 107, 445 N.E. 2d 752, *Village of Cary v. Pollution Control Board* (1980), 82 Ill. App. 3d 793, 403 N.E. 2d 83, and *Central Illinois Public Service Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 397, 344 N.E. 2d 229 (CIPS), for the proposition that a permit applicant may challenge the application of a regulation in a permit appeal on the basis that the rule as applied to the particular individual or entity would impose an arbitrary and unreasonable hardship. Our review of these cases, however, reveals that East Moline has misconstrued the holdings, and these cases are not determinative of the issue at hand.

■ East Moline's application for permit was made pursuant to section 39 of the Illinois Environmental Protection Act (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039). Section 39(a) of the Act states "it shall be the duty of the Agency to issue such a permit upon proof

by the applicant that the facility *** will not cause a violation of this Act or of regulations hereunder." Further, "[i]n granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board hereunder." (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a).) Section 39(b) of the Act specifically allows the Agency to issue NPDES permits as defined in the Federal Water Pollution Control Act Amendments of 1972 (P.C. 92—500) (33 U.S.C.A. §1251 *et seq.* (1985)), and further, allows for conditions to be imposed to accomplish the purposes of this Act, including effluent limitations. (Ill. Rev. Stat. 1985, ch. 111½, par 1039(b).) If the Agency refuses to grant a permit or grants a permit with conditions under section 39, the aggrieved party may file a petition for hearing with the Board. "At such hearing the rules prescribed in Sections 32 and 33(a) of this Act shall apply, and the burden of proof shall be on the petitioner." (Ill. Rev. Stat. 1987, ch. 111½, par. 1040(a)(1).) Section 32 of the Act outlines hearings and states that any party "may make oral *** testimony, cross-examine witnesses, or take any combination of such actions. Ill. Rev. Stat. 1987, ch. 111½, par. 1032.

■ Generally, the issue to be decided at a permit hearing is whether the applicant can demonstrate that no violation of the Act would occur if the permit was issued or that no violation would occur if the permit was issued without special conditions. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a); see also *Joliet Sand & Gravel Co. v. Pollution Control Board* (1987), 163 Ill. App. 3d 830, 516 N.E. 2d 955.) The cases of *Celotex* and *CIPS*, however, stand for the proposition that a permit applicant may challenge the validity of a Board regulation at a permit hearing. In *Celotex*, the Agency contended that section 29 of the Act sets forth the exclusive method for challenging a regulation by taking action within 35 days of its adoption. (Ill. Rev. Stat. 1987, ch. 111½, par. 1029.) Thus, the Agency contended the only means for testing the validity of a regulation after a permit denial is to request the Board to change the regulation under section 28 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 28). The *Celotex* court stated that there is nothing in the Act indicating the General Assembly intended to deprive one the opportunity to challenge the validity of a regulation simply because the regulation was not challenged immediately after its adoption. The court further stated the absurdity of the Agency's position was clear if the applicant was not in business 35 days after adoption of the regulation. (*Celotex*, 94 Ill. 2d 107, 445 N.E. 2d 752.) Thus, the court held that since the regulations, upon which the Agency based its permit denial, were invalid as improperly

promulgated, the permit applicant was entitled to test the validity of the regulations at the permit application hearing. (*Celotex*, 94 Ill. 2d 107, 445 N.E. 2d 752.) *Celotex*, however, does not address the issue of whether the validity of a regulation can be challenged as applied to the applicant for the reasons stated by East Moline in the present case. The *CIPS* court also reached the same decision as the *Celotex* court and was cited in *Celotex* as authority and also similarly fails to address the issues at hand. We completely agree with these decisions but find them inapplicable to this issue.

■ On the other hand, the *Cary* decision, also cited by East Moline, holds that the validity of a regulation as applied may be challenged at a Board hearing. We agree with *Cary* because the central reason for a variance is that the regulation as applied to a petitioner would be arbitrary or unreasonable. Again, however, *Cary* does not address the issue presented herein and is therefore not controlling.

■ The statutory mechanism for obtaining relief from compliance with a regulation on the basis of an arbitrary or unreasonable hardship is to petition for a variance under section 35 of the Act. (Ill. Rev. Stat. 1987, ch. 111½, par. 1035.) East Moline is not challenging the general applicability of a regulation, but is stating the regulation as applied to East Moline creates an unreasonable hardship. In *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E. 2d 84, the court determined that a petitioner could not challenge a regulation as applied at a hearing pursuant to section 29 and stated:

"Where one fails to challenge the rules generally and instead seeks to relax their enforcement against him exclusively due to arbitrary and unreasonable hardship, the legislature has determined that the appropriate remedy is for the aggrieved party to seek a variance in accordance with Title IX of the Act. If that is denied, the aggrieved can petition to this court for review based on the record at that proceeding." (*Commonwealth*, 25 Ill. App. 3d at 281, 323 N.E. 2d at 90.)

Although *Commonwealth* concerned a challenge under section 29, we believe its reasoning is more applicable to the present situation than that of *Celotex*, *CIPS* or *Cary*.

■■ The issue at a permit hearing is whether the applicant can prove no violation of the Act will occur. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a).) Applying for what is, in effect, a variance at a permit hearing is not provided for by the Act or case law, and this makes sense because there are undoubtedly many more applications for permits than petitions for variances and the permit procedure

should not be unduly delayed by variance requests.

■■ ■ Regarding issue 2, East Moline argues that the hearing officer and Board improperly excluded evidence in direct contradiction of the holding in *Dean Foods Co. v. Illinois Pollution Control Board* (1986), 143 Ill. App. 3d 322, 492 N.E. 2d 1344. Moreover, East Moline argues that the Board improperly failed to follow the plain requirements of its own procedural regulations regarding the introduction of evidence in NPDES permit appeal proceedings that is outside the Agency record. (35 Ill. Adm. Code §105.102(b)(8) (1985).) Section 105.102(b)(8) of the Board regulations specifically addresses NPDES permit appeals and states:

> "The hearings before the Board shall extend to all questions of law and fact presented by the entire record. The Agency's findings and conclusions on questions of fact shall be *prima facie* true and correct. If the Agency's conclusions of fact are disputed by the party or if issues of fact are raised in the review proceeding, the Board may make its own determination of fact based on the record. If any party desires to introduce evidence before the Board with respect to any disputed issue of fact, the Board shall conduct a *de novo* hearing and receive evidence with respect to such issue of fact." (35 Ill. Adm. Code §105.102(6)(8) (1985).)

Furthermore, section 40(a)(1) of the Act, allowing for appeals of permit denials or grants of permits with conditions by the Agency under section 39, indicates hearings before the Board shall be conducted in accord with section 32 of the Act. (Ill. Rev. Stat. 1987, ch. 111½, par. 1040(a)(1).) In turn, section 32 of the Act says any party to a hearing "may be represented by counsel, may make oral or written argument, offer testimony, cross-examine witnesses, or take any combination of such actions." Ill. Rev. Stat. 1987, ch. 111½, par. 1032.

In *Dean Foods*, the court squarely addressed the question of whether a permit applicant could introduce new evidence at a hearing before the Board. The issue arose when the Agency refused to grant petitioner a permit allowing it to test for TSS at a point in its waste water stream, which it had previously been allowed by permit. Apparently, petitioner had two separate streams that it used for its operation; one being for effluent discharge and the other for cooling purposes. The petitioner in the past had been allowed to test the TSS level for its discharge at a point after the waste water stream had been diluted by the cooling stream. The Agency refused to grant the permit allowing for testing after the dilution point on the grounds that it violated the dilution rule (35 Ill. Adm. Code §304.102 (1985))

and petitioner failed to provide sufficient information for determining that the best degree of treatment of waste water consistent with technological feasibility, economic reasonableness, and sound engineering judgment (BDT) had been provided before the Agency could consent to sampling at the location suggested by petitioner. Petitioner appealed the permit condition and presented evidence at the Board hearing that it was providing BDT to its waste water prior to dilution. This evidence was not presented, however, to the Agency and, over objection, the hearing officer allowed the evidence subject to a Board ruling on admissibility. The Board subsequently excluded petitioner's BDT evidence because, although petitioner had disputed before the Agency whether BDT was being provided, the Board found that a "*de novo*" hearing as prescribed by 35 Illinois Administrative Code section 105.102(b)(8) (1985), referred only to the manner in which the Board reviewed the issue, not to the introduction of new evidence before the Board. The court, however, determined that the plain language of the regulation required introduction of the proffered evidence and analyzed section 105.102(b)(8) as follows:

"The first three sentences of section 105.102(b)(8) deal with the role of the record in Board hearings. They state that the hearings must cover all questions of law and fact presented by the record and that when issues of fact are raised the Board may make its own decision based on the record. Then the rule discusses matters beyond the record. It states that if any party desires to 'introduce' evidence 'before the board,' the Board must conduct a *de novo* hearing 'and receive evidence.' This language clearly refers to evidence being presented directly to the Board and not merely via the record. To interpret this language to mean that a party at a *de novo* hearing is confined to the mere *re*-presentation of evidence already presented and accounted for in the record is not supportable. Such a hearing would amount to merely a 'live' review of the record and not be a *de novo* hearing at all. The Board's interpretation would render the rule meaningless.

Moreover, the term '*de novo*' has a well-known legal meaning. Black's Law Dictionary defines a hearing *de novo* as:

'Generally a new hearing or a hearing for the second time, contemplating an entire trial in the same manner in which matter was originally heard and a review of previous hearing. On a hearing "de novo" court hears matter as court of original and not appellate jurisdiction.' Black's Law Dictionary 649 (5th ed. 1979).

American Jurisprudence characterizes *de novo* judicial review of administrative proceedings as:

'[T]rying the matter anew the same as if it had not been heard before and as if no decision had been previously rendered. *** Even though designated an "appeal," a review in which the court is not confined to a mere re-examination of the case as heard before the administrative agency but hears the case de novo on the record before the agency and such further evidence as either party may see fit to produce is to be regarded as an original proceeding.' (2 Am. Jur. 2d *Administrative Law* sec. 698 (1962).)

This characterization of a *de novo* proceeding is absolutely consistent with the rule, which first discusses the use of the record and then evidence beyond the record." *Dean Foods*, 143 Ill. App. 3d at 334-35, 492 N.E. 2d at 1353.

We have no quarrel with the rationale of *Dean Foods*; however, we do not believe *Dean Foods* creates an open door for a petitioner to present any evidence it so desires. Section 39(a) of the Act requires the Agency to put in writing its reasons for denying a permit. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a).) A petitioner's first opportunity to take issue with the Agency's factual conclusions supporting denial occurs at the Board hearing. If, in fact, the Agency makes inferences or bases its decisions on its own investigations, it would be manifestly unfair to restrict an applicant to mere cross-examination at a Board hearing, as a means of refuting the Agency's factual conclusions, especially when keeping in mind that an NPDES permit applicant does not have the opportunity for a hearing before the Agency. Nonetheless, the statutorily mandated issue to be addressed at a Board hearing based on a permit denial is whether the applicant can prove that the facility will not cause a violation of the Act or of the regulations. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a).) Except for those cases holding that the general validity of a Board regulation may be addressed at a permit hearing, the above issue is the only relevant issue to be addressed, and therefore, any tendered evidence must relate to that issue.

Both parties state that the cases of *Joliet Sand & Gravel Co. v. Pollution Control Board* (1987), 163 Ill. App. 3d 830, 516 N.E. 2d 955, and *Alton Packaging Corp. v. Pollution Control Board* (1987), 162 Ill. App. 3d 731, 516 N.E. 2d 275, are at odds with *Dean Foods*, but we do not agree. In *Joliet Sand & Gravel*, the petitioner was entitled to a hearing before the Board subsequent to being denied an operating permit by the Agency. Prior to the hearing, however, both

written and oral discovery was had, and the petitioner was allowed to present witnesses and other evidence refuting the Agency's reasons for denial. Within the context of that opinion, this court stated that "the sole question before the Board is whether the applicant proves that the application, as submitted to the Agency, demonstrated that no violation of the Environmental Protection Act would have occurred if the requested permit had been issued." *Joliet Sand & Gravel,* 163 Ill. App. 3d at 833.) We do not consider this language contradictory with the court's decision in *Dean Foods.* We believe *Dean Foods* merely stands for the proposition that additional evidence may be submitted to the Board in support of its application, when there are issues of fact to be addressed as a result of an Agency denial or the imposition of undesired conditions on a permit. The central issue as stated in *Joliet Sand & Gravel,* however, remains the same. Moreover, *Joliet Sand & Gravel* concerned denial of an operating permit, and therefore, this court had no occasion to address the *"de novo"* language of section 105.102(b)(8) which specifically applies to NPDES permit hearings. Nor was any question presented to this court in *Joliet Sand & Gravel* about whether evidence, not submitted to the Agency, should be excluded by the Board. All the evidentiary questions in *Joliet Sand & Gravel* were procedural in nature.

Similarly, in *Alton,* the court in *dicta* rejected petitioner's argument that it was entitled to an entirely new hearing in which to submit reports that it failed to submit at a previous Board hearing. The Board thus had no opportunity to either admit or reject petitioner's supposed evidence at the previous hearing. Moreover, the *Alton* decision does not regard an NPDES permit, and therefore, the court was not required to interpret section 105.102(b)(8) of the Board regulations as that regulation applies solely to NPDES permit hearings and arguably allows for evidence to be introduced before the Board that would not be allowed for other types of permit hearings. *Alton* has no bearing on this case.

■ We agree with the result reached in *Dean Foods,* but decline to give the opinion the broad interpretation now lobbied for by East Moline. Nothing in the *Dean Foods* decision indicates an applicant has free reign to go into matters not germane to the issue to be decided. In this case, the evidence East Moline tendered to the Board was irrelevant for determining whether it could prove that no violation of the Act or regulations would occur if the permit was granted without the restrictions imposed. East Moline's remedy is to file a variance petition under section 35 of the Act. Ill. Rev. Stat. 1987, ch. 111½, par. 1035.

359

Finally, there were a number of motions filed with this court. All motions filed, except for the Board's motion for leave to file supplemental authority and East Moline's motion to take judicial notice of the *Dean Foods* record, are denied. The excepted motions above are granted.

Therefore, for all of the foregoing reasons, the decision of the Illinois Pollution Control Board is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.